A10A1828. FLORES v. THE STATE.
A10A1829. LOPEZ v. THE STATE.
(707 SE2d 578)

PHIPPS, Presiding Judge.

Lucio Flores, Fedrico Lopez, and Agustin Garcia-Maldonada were tried together on drug and weapons charges. The jury found Flores and Lopez guilty of trafficking in methamphetamine and possession of a firearm during the commission of a felony, and they appealed from those convictions. Flores and Lopez contend the trial court erred by denying their motions for directed verdicts of acquittal based on the insufficiency of the evidence, by not providing proper notice of arraignment and never formally arraigning them, and by not severing their trials from Garcia-Maldonada's trial. Flores's assertions are without merit, and we affirm his convictions. However, because Lopez's convictions were not supported by sufficient evidence, they are reversed.

*Case No. A10A1828*

1. Flores contends that he was entitled to a directed verdict of acquittal because "the only evidence against [him] was that he arrived [in the parking lot where the drugs were found] at approximately the same time as the vehicle containing [the] drugs" arrived. This contention is without merit.

When a criminal defendant challenges the sufficiency of the evidence supporting his conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt."[1] "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld."[2] "The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction."[3]

Viewed in the light most favorable to the prosecution, the record shows that police officers arrested an individual for allegedly trafficking in methamphetamine then, the same day, sought his assistance as a confidential informant in other investigations. With an officer present, the confidential informant engaged in a telephone conversation via speaker phone with what sounded to the officer to be a Spanish-speaking male. After the conversation ended, the confidential informant, the officer and two other officers drove the confidential informant's vehicle and an unmarked police vehicle to a motel, where the officers began a surveillance of the motel parking lot; the surveillance lasted about an hour. During the surveillance, the confidential informant engaged in another phone conversation with what sounded to an officer to be a Spanish-speaking male. After that phone call concluded, a green vehicle entered the parking lot. The driver of that vehicle, Garcia-Maldonada, parked it and remained inside.

Three to four minutes later, a black vehicle entered the parking lot and drove in front of the room where the informant was standing, approximately 150 feet away from the green vehicle. When the informant approached the black vehicle and made contact with its occupants, officers moved in and pulled the occupants out of both vehicles.

Flores was the driver of the black vehicle, and Lopez was the passenger. Officers found a handgun on the driver's side floorboard, and a handgun on Lopez's person. They found no drugs in the black vehicle.

In the green vehicle, in a container under the driver's seat, officers found 446.74 grams[4] of methamphetamine. Garcia-Maldonada told one of the officers at the scene that the vehicle was not his, that he did not know what was in the vehicle, and that he was being paid to drive the vehicle. Police established that both vehicles were registered in names other than the defendants' names.

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979) (citation omitted).

[2] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (citation and punctuation omitted).

[3] *Shelton v. State*, 279 Ga. 161, 162 (3) (611 SE2d 11) (2005) (citation omitted).

[4] According to one officer, there was approximately one pound of methamphetamine.

At trial, all three defendants used interpreters to translate what was being said in the proceedings from English to Spanish and vice versa.

Garcia-Maldonada testified that Flores had agreed to lend him money if he did Flores a "favor," which was to drive the vehicle. As Flores had instructed, Garcia-Maldonada met him at a gas station to get the vehicle. There, Flores gave Garcia-Maldonada keys to the vehicle, instructed him on where to drive and park, and then led him to the motel. Garcia-Maldonada added that "sometimes they were behind me and sometimes they were in front of me," and that he was able to arrive before Flores because he "got ahead of them" and knew where he "needed to go."

A police officer with experience and specialized training in narcotics investigations testified that with an "advance[d] drug dealer, which is anything more than an ounce" of drugs, there is usually a second car, so that the dealers and the drugs are not in the same car. "[T]hey don't want to mix both of them together, be taken down and . . . lose everything."

OCGA § 16-13-31 (e) provides, in relevant part, that a person commits the offense of trafficking in methamphetamine when he knowingly possesses 28 grams or more of methamphetamine or any mixture containing methamphetamine. OCGA § 16-11-106 (b) (5) provides, in relevant part, that a person commits a felony if he has on or within arm's reach of his person a firearm during the commission of any felony involving the trafficking of illegal drugs.

Possession of contraband may be actual or constructive.[5] A person who, though not in actual possession, knowingly has both the power and intention at a given time to exercise dominion or control over a thing is then in constructive possession of it.[6] Here, the evidence was sufficient to show that Flores knowingly had the power and intention to exercise dominion and control over the drugs stashed inside the green vehicle, as he had moments earlier given Garcia-Maldonada the keys to the vehicle, told him where to drive and park the vehicle, and led him (at least part of the way) to the motel. Under the circumstances, the jury was authorized to find Flores guilty of trafficking in methamphetamine beyond a reasonable doubt.[7] It was also authorized to find Flores guilty of possession of a firearm during the commission of a felony because a handgun was found on the driver's side floorboard of the vehicle he had just been driving.[8]

---

[5] *Fyfe v. State*, 305 Ga. App. 322, 326 (2) (699 SE2d 546) (2010).

[6] Id.

[7] See id. at 327-328 (2); *Sherrer v. State*, 289 Ga. App. 156, 160 (2) (656 SE2d 258) (2008).

[8] See *Driscoll v. State*, 295 Ga. App. 5, 8 (1) (b) (670 SE2d 824) (2008).

2. Flores contends that he received inadequate notice of his arraignment and was never formally arraigned, in violation of OCGA §§ 17-7-91 and 17-7-93.[9] Flores's contention presents no basis for reversal. At trial, Flores voiced no objection to the alleged lack of arraignment or notice. Any error in the lack of arraignment was waived by his failure to raise the issue prior to verdict.[10] Moreover, even if there had been no waiver, procedural errors occurring at the arraignment stage are subject to a harmless error analysis.[11] In light of Flores's failure to show (or even assert) any harm, reversal is not required.[12]

3. Flores contends that the court erred in denying his motion to sever his trial from that of Garcia-Maldonada. This assertion is without merit.

"The grant or denial of a motion to sever is within the discretion of the trial court, and absent an abuse of discretion, denial of a motion to sever is not grounds for reversal."[13] Flores had the burden of making a clear showing of prejudice and a denial of due process in the absence of severance.[14]

> In determining whether to grant a severance, a trial court should consider whether the number of defendants will create confusion of the evidence and the law applicable to each individual defendant, whether there is a danger that evidence admissible against one defendant will be considered against another despite the cautionary instructions of the court, and whether the defenses of the defendants are antagonistic to each other or each other's rights.[15]

Flores contends that his trial should have been severed from Garcia-Maldonada's because there was a danger that evidence against Garcia-Maldonada would be considered against him and because Garcia-Maldonada asserted antagonistic defenses. Flores argues that he was prejudiced when Garcia-Maldonada's attorney asked a state's witness about Flores's efforts after his arrest to assist the state in "taking down further dope dealers" and on Flores's

---

[9] OCGA § 17-7-91 provides, in relevant part, that in criminal cases the court clerk shall mail notice of arraignment to the defendant and his attorney at least five days prior to arraignment, and the defendant shall be arraigned on the date fixed by the court. OCGA § 17-7-93 sets forth procedures to be followed during the arraignment.

[10] *Spear v. State*, 270 Ga. 628, 632 (5) (513 SE2d 489) (1999).

[11] See *Cox v. State*, 279 Ga. 223, 228 (9) (610 SE2d 521) (2005).

[12] Id. at 228-229 (9).

[13] *Johnson v. State*, 258 Ga. 504, 505 (2) (371 SE2d 651) (1988) (citation omitted).

[14] *Moss v. State*, 275 Ga. 96, 97 (2) (561 SE2d 382) (2002).

[15] Id. (footnote omitted); see *Harrell v. State*, 253 Ga. 474, 475 (2) (321 SE2d 739) (1984).

alleged flight attempt before trial. He also argues that he was prejudiced by the admission of Garcia-Maldonada's statements to police and at trial that implicated Flores.

The existence of antagonistic defenses in and of itself does not require severance, and Flores has not demonstrated any clear prejudice and denial of due process which might have been avoided by severing the trials.[16] For instance, the testimony of Garcia-Maldonada implicating Flores would be admissible in a separate trial,[17] as would evidence of Flores's attempted flight[18] and, under certain circumstances, statements Flores made while cooperating with the state.[19] Notably, Flores did not object when Garcia-Maldonada's counsel asked the state's witness if he had used Flores to "tak[e] down" other drug dealers, made no objection when that attorney asked if the witness had tried to use Flores again later, and did not object when the state thereafter asked the witness if Flores had cooperated with and assisted police. Even assuming that this issue was preserved, the inquiry by counsel for Garcia-Maldonada was not harmful in light of the strength of the evidence against Flores.[20] Moreover, because Garcia-Maldonada testified at trial, Flores had ample opportunity to cross-examine him;[21] we note that no prejudice amounting to a denial of due process rights is shown where an accomplice, who is subject to cross-examination, takes the stand and blames the appellant or attributes to the appellant a greater degree of culpability than the accomplice himself bears.[22]

Flores has therefore not shown that the prejudice that he contends resulted from the evidence or inquiry at issue would have been avoided by a separate trial. Because he has not shown that he was prejudiced by the refusal to sever, no abuse of discretion is demonstrated.[23]

---

[16] *Kennedy v. State*, 253 Ga. 132, 135 (2) (317 SE2d 822) (1984).

[17] See OCGA § 17-8-4 (a); *Kennedy*, supra.

[18] See generally *Renner v. State*, 260 Ga. 515, 517-518 (3) (b) (397 SE2d 683) (1990).

[19] See generally OCGA § 17-16-4 (a) (1) (providing for the state's use at trial of the defendant's relevant statements to law enforcement officers or members of the prosecuting attorney's staff under certain circumstances).

[20] See *Chapman v. State*, 263 Ga. 393, 394 (2) (435 SE2d 202) (1993).

[21] See *Durham v. State*, 240 Ga. 203 (1) (240 SE2d 14) (1977) (no prejudice shown by denial of motion to sever where all defendants testified and were cross-examined); *Kennedy*, supra.

[22] *Chandler v. State*, 213 Ga. App. 46, 47 (1) (443 SE2d 679) (1994).

[23] See *Gee v. State*, 261 Ga. 178, 179 (3) (402 SE2d 719) (1991); *Diaz v. State*, 280 Ga. App. 413, 416 (634 SE2d 160) (2006).

*Case No. A10A1829*

4. Lopez contends that there was insufficient evidence to support his convictions and that the trial court therefore erred in denying his motion for a directed verdict. We agree and reverse his convictions.

In Count 1 of the indictment, the state charged Lopez with trafficking in methamphetamine, alleging that he unlawfully possessed more than 400 grams of a mixture containing methamphetamine. The evidence against Lopez was insufficient to authorize a rational trier of fact to find beyond a reasonable doubt that he was in actual or constructive possession of the drugs.[24] There is no presumption of drug possession here, because there was no evidence that Lopez owned or controlled the vehicle in which the drugs were found;[25] in fact, there was no evidence that he had even been in or had any connection to that vehicle. No testimony from Garcia-Maldonada (or anyone else) implicated Lopez in the transaction. The evidence showed nothing more than Lopez's presence in the vehicle with Flores. The state was required to produce evidence of some meaningful connection between Lopez and the drugs, which it failed to do.[26] There was no evidence that Lopez had the power and intent to exercise control over the drugs found in the other vehicle.[27]

Further, Lopez's conviction cannot be upheld on the ground that he was a party to the crime of trafficking in methamphetamine, as the state failed to adduce evidence that he intentionally caused another to commit the crime, aided or abetted in the commission of the crime, or advised or encouraged another to commit the crime.[28] Thus, the state's evidence did not show essential links between Lopez's proven behavior and the drug trafficking charge.[29] The court erred in denying Lopez's motion for a directed verdict of acquittal on the trafficking in methamphetamine charge.[30]

In Count 2 of the indictment, Lopez was charged with the offense of possession of a firearm during the commission of a felony, namely, possession of methamphetamine. Because the evidence did

---

[24] See *Jackson v. Virginia*, supra; *Mitchell v. State*, 268 Ga. 592-593 (492 SE2d 204) (1997).

[25] See *Mitchell*, supra.

[26] See *Brown v. State*, 285 Ga. App. 330, 331 (646 SE2d 273) (2007).

[27] See *Stevens v. State*, 245 Ga. App. 237, 238 (1) (537 SE2d 688) (2000).

[28] See OCGA § 16-2-20; see *Crenshaw v. State*, 183 Ga. App. 527, 528 (1) (359 SE2d 419) (1987). See generally *Gresham v. State*, 298 Ga. App. 136, 140 (1) (679 SE2d 344) (2009) (mere presence at scene of crime and mere approval of criminal act are not sufficient to show defendant was party to the crime).

[29] See *Gresham*, supra at 141.

[30] See *Stevens*, supra at 239 (1).

not support the "during the commission of a felony" element of the firearm possession charge, Lopez's conviction for possession of a firearm during the commission of a felony must be reversed.[31]

5. In light of our holding in Division 4, Lopez's remaining assertions of error are moot.

*Judgment affirmed in Case No. A10A1828. Judgment reversed in Case No. A10A1829. Miller, P. J., and McFadden, J., concur.*

DECIDED MARCH 10, 2011 —

*Hernan, Taylor & Lee, Christopher C. Taylor, Jerome Lee*, for appellants.

*Tommy K. Floyd, District Attorney, Sandra G. Rivers, Assistant District Attorney*, for appellee.

---

[31] Compare *State v. Robinson*, 275 Ga. App. 117-118 (619 SE2d 806) (2005) (finding evidence sufficient to support a guilty verdict for possession of firearm during commission of felony of aggravated assault notwithstanding defendant's acquittal on aggravated assault charge); *Fields v. State*, 263 Ga. App. 11, 12 (587 SE2d 171) (2003) (same). See generally *King v. Waters*, 278 Ga. 122, 123-124 (2) (598 SE2d 476) (2004) (stating that the commission of the felony named in the indictment is an essential element of the offense of possession of a firearm during commission of the felony, and reversing conviction for possession of a firearm during commission of aggravated assault where aggravated assault conviction was reversed).