**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 12, 2014**

# In the Court of Appeals of Georgia

A13A1658. SCOTT v. THE STATE.

MILLER, Judge.

Following a jury trial, Michael Scott was convicted of trafficking cocaine (OCGA § 16-13-31 (a) (1)) (Count 1); possession of cocaine with intent to distribute (OCGA § 16-13-30 (b)) (Count 2); possession of marijuana with intent to distribute (OCGA § 16-13-30 (j)) (Count 3); maintaining a dwelling or structure for the distribution of controlled substances (OCGA § 16-13-42 (5)) (Count 4); and three counts of possession of a firearm during the commission of a crime (OCGA § 16-11-106 (b) (4)) (Counts 5, 6, and 7).[1] Scott appeals from the denial of his motion for new

---

[1] Scott was tried with co-defendants Kenneth Scott, Anthony Christopher Anderson, and Michael Lane. This Court affirmed the convictions of Kenneth Scott and Anderson in Case Nos. A12A1961 and A12A2293, respectively, and the Court's opinion in the consolidated appeals was unpublished. Michael Scott's appeal was remanded to the trial court for completion of the record, was subsequently redocketed in this Court, and is presently before us.

trial, contending that the evidence was insufficient to sustain his convictions on any of the charges, the trial court erred by not granting a directed verdict, the trial court erred in allowing a witness to testify as an expert, and he received ineffective assistance of counsel. For the reasons that follow, we reverse.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence. We determine only whether the evidence authorized the jury to find the defendant guilty beyond a reasonable doubt, and in doing so we neither weigh that evidence nor judge the credibility of the witnesses.

(Citations and punctuation omitted.) *Castillo v. State*, 288 Ga. App. 828 (655 SE2d 695) (2007).

So viewed, the trial evidence shows that Anthony Holloway had known Michael Scott and his brother, Kenneth Scott, for at least 16 years through the neighborhood surrounding 307 East Jenkins Street in Vidalia, Georgia. Michael Scott lived at 307 Martin Luther King Jr. Boulevard, in a house behind his brother. Kenneth Scott also rented the property at 307 East Jenkins from an individual who testified that he was unaware of the drug activity at the house. Co-defendant Lane lived next door, and an electrical cord was run from Lane's residence to 307 East Jenkins to provide power.

2

Holloway had been going to 307 East Jenkins for a couple of years and had been inside the house. While there, Holloway observed the sale of drugs. When people would drive up to the house to buy drugs, they would blow the horn, and Kenneth Scott would tell someone to "hit a block." On some occasions, Holloway heard Kenneth Scott tell people that he did not have any drugs. A couple of days later, Kenneth Scott would have more drugs, and he would tell people that he had "re'd up." According to Holloway, co-defendant Anderson would be at the house for a couple of weeks, and, when he would leave, Kenneth Scott would run out of drugs. When Anderson returned, people would return to the house to buy drugs. Holloway witnessed over 100 drug transactions take place at 307 East Jenkins Street.

In 2009, the Vidalia Police Department began receiving tips about suspected drug activity around 307 East Jenkins Street. Upon investigating those tips, an undercover police officer made a hand-to-hand purchase of drugs at 307 East Jenkins Street in June or July. Thereafter, police officers used a confidential informant to make a controlled drug buy of three packages of crack cocaine. Police officers then obtained a search warrant for 307 East Jenkins Street.

On September 25, 2009, several police officers executed the search warrant. About 10 minutes prior to the execution of the warrant, one officer, who was on patrol in the area, drove by 307 East Jenkins and observed Michael Scott and the three other co-defendants standing outside in the front yard. The officer later returned to 307 East Jenkins with the search team, and Michael Scott was walking along the side of the house at that time. Officers detained Michael Scott during a search of the house. Officers also detained Anderson, who had been sitting on the front porch, and Holloway, who had been standing near Michael Scott. An officer subsequently searched Michael Scott prior to placing him in a patrol car, and the officer found approximately $254 in cash on Scott's person. The cash was in small denominations, with no bill larger than $20.

Upon entering 307 East Jenkins, officers saw several packages of crack cocaine, packaged as if for resale, and slung in a straight line from the front door, where Anderson had been seated, to a small table in the middle of the room. During a search of the residence, officers found: 37 individually wrapped packages of powder cocaine; another large chunk of cocaine of powdery substance in a Ziploc bag inside a box in the corner of the front room; three cigar boxes containing individual packages of marijuana and another individual package of cocaine; money scattered

on the floor; digital scales; and cutting tools. Officers also found a large slab of crack cocaine weighing approximately 72 grams. Officers also found three loaded guns in the front room of the house there were strategically placed such that if a person was standing in the middle of the room, he could easily access any one of the three guns. Officers also recovered personal items belonging to Kenneth Scott and Anderson from inside the residence.

A detective testified that the slab of cocaine weighing 72 grams would be cut down and packed for individual sale, and that it had an estimated value of $7,200. The detective testified that the seized evidence was consistent with drug distribution, and that 307 East Jenkins was a "trap house," or a building used mainly for distributing drugs.

1. On appeal, Scott contends the evidence was insufficient to support any of the drug charges, because he was merely present at 307 East Jenkins when the search warrant was executed, there was no evidence that he had actual or constructive possession of the drugs, and there was no evidence that he was a party to these crimes. We agree.

In order to prove the three drug charges, the State was required to prove that Scott possessed the requisite drugs. For cocaine trafficking, the State was required to

5

prove that Scott knowingly possessed 28 grams or more of cocaine. OCGA § 16-13-31 (a) (1); *McGee v. State*, 316 Ga. App. 661, 664 (1) (730 SE2d 131) (2012) ("[T]he State must prove that the defendant knew that he possessed a substance and knew that the substance contained some amount of cocaine.") (citation and punctuation omitted). Similarly, the State was required to prove that Scott possessed cocaine and marijuana with the intent to distribute. OCGA § 16-13-30 (b) (possession with intent to distribute cocaine); OCGA § 16-13-30 (j) (1) (possession with intent to distribute marijuana).

In this case, it is undisputed that Scott did not actually possess the drugs. Accordingly, "[t]he issue before us is whether [Scott] was in joint constructive possession of the drug, and the question turns on whether he and the other defendants knowingly shared the power and intention to exercise dominion or control over them." *Vines v. State*, 296 Ga. App. 543, 545 (1) (675 SE2d 260) (2009). Mere spatial proximity to contraband is not sufficient to prove constructive possession. *Brown v. State*, 285 Ga. App. 330, 331 (646 SE2d 273) (2007). Rather, the State must show that the defendant had the power and intent to exercise control over the drugs, which requires "evidence of some meaningful connection between the defendant and the [drugs]." (Citation and punctuation omitted.) Id. Moreover,

6

one who intentionally aids or abets in the commission of a crime is a party to it. OCGA § 16-2-20 (b) (3). It is true mere presence at the scene of a crime, even coupled with knowledge and approval, is insufficient to convict one of being a party. However, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred. A person will not be presumed to act with criminal intention, but the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted. If the totality of circumstantial evidence is sufficient to connect the defendant with the possession of the drugs, the conviction will be sustained, even though there is evidence to authorize a contrary finding.

(Citations and punctuation omitted.) *Martinez v. State*, 303 Ga. App. 71, 73-74 (692 SE2d 737) (2010).

Here, when the police executed the search warrant on September 25, 2009, they found Scott standing outside 307 East Jenkins. The undisputed evidence shows, however, that he did not own or lease that residence. Consequently, there is no presumption that Scott possessed the drugs. See *Bailey v. State*, 294 Ga. App. 437, 439-440 (1) (669 SE2d 453) (2008) (where evidence shows that a defendant owned or controlled premises where contraband was found, it gives rise to a rebuttable presumption that the defendant possessed the contraband). While Scott was seen outside the house on prior occasions, including about 10 minutes prior to the police officers' arrival, there was no evidence that he was inside the house the day the search

7

was conducted. Additionally, police officers did not find anything "in the residence that linked [Scott] to the residence such as clothing, bills, fingerprints, financial statements, photographs, records, books, or other personal belongings." *Brown*, supra, 285 Ga. App. at 332. The officers also did not find drugs on Scott or "anything on his person linking him to the house or its contents." Id. The fact that Scott had over $250 when arrested is also insufficient to connect him to the drugs found inside the residence. See *Paden v. State*, 216 Ga. App. 188, 190 (1) (453 SE2d 788) (1995).

Further, Scott's conviction cannot be upheld on the ground that he was a party to the crimes, because the State failed to present evidence that he intentionally caused another to commit the crimes, aided or abetted in the commission of the crimes, or advised or encouraged another to commit the crimes. Notably, although Holloway testified that he saw hundreds of drug transactions at the house, there is no evidence that Scott was involved in any of these transactions. Rather, Holloway testified that Scott's brother, Kenneth, directed the drug transactions and that Anderson supplied the drugs; however, he never specifically identified Scott as being involved. Likewise, while the police purchased drugs at 307 East Jenkins, including a hand-to-hand purchase by an undercover officer in June or July 2009, there was no evidence that Scott was involved in these transactions either. In other words, while the

8

circumstantial evidence shows that Scott may have been aware of the drug trafficking at the house, there was no evidence showing that Scott participated in any criminal activity occurring on the property. See *Crenshaw v. State*, 183 Ga. App. 527, 529 (1) (359 SE2d 419) (1987). Consequently, the State's evidence did not show essential links between Scott's proven conduct and the drug trafficking and distribution charges. See, e.g., *Flores v. State*, 308 Ga. App. 368, 373 (4) (707 SE2d 578) (2011) (defendant's mere presence in vehicle, which he did not own or control, was insufficient to sustain conviction for trafficking methamphetamine where the State failed to present evidence of some meaningful connection between the defendant and the drugs); *Brown*, supra, 285 Ga. App. at 330, 332-333 (even though defendant arranged to sell cocaine to a confidential informant, his presence outside the residence was insufficient to sustain conviction for trafficking cocaine where no evidence linked the defendant to the property or to the drugs found inside); *Stringer v. State*, 275 Ga. App. 519, 521-522 (621 SE2d 761) (2005) (reversing conviction for possession of cocaine where no evidence linked defendant to cocaine found in hotel room other than fact that the defendant was in the room and it was registered in his name). Compare *Lott v. State*, 303 Ga. App. 775, 779 (1) (694 SE2d 698) (2010) (evidence supported possession for trafficking conviction even though defendants did

not own house where drugs were found because the defendants had keys to the house, they were found inside the house, another defendant ran towards the bedroom when officers arrived to execute a search warrant, and they found the defendants' personal items inside the residence).

Accordingly, we reverse Scott's convictions for trafficking cocaine (Count 1), possession of cocaine with intent to distribute (Count 2), and possession of marijuana with intent to distribute (Count 3). Since Scott's convictions for possession of a firearm during the commission of a felony (Counts 5, 6, and 7) hinge on these other felony convictions, they must also be reversed. See *Flores*, supra, 308 Ga. App. at 373-374 (4).

2. Scott also contends that the evidence was insufficient to support his conviction for knowingly keeping a dwelling for the purpose of using controlled substances in violation of OCGA § 16-13-42 (a) (5). We agree.

> [I]n order to support a conviction under OCGA § 16-13-42 (a) (5) for maintaining a residence or other structure or place used for keeping controlled substances, the evidence must show that one of the purposes for maintaining the structure was the keeping of the controlled substance; thus, the mere possession of limited quantities of a controlled substance within the residence or structure is insufficient to support a conviction under OCGA § 16-13-42 (a) (5). . . . [I]n order to support a conviction under this statute for maintaining a residence or other structure or place used for selling controlled substances, the evidence

10

must be sufficient to support a finding of something more than a single, isolated instance of the proscribed activity. . . . [I]n determining the sufficiency of the evidence in these regards, each case must be adjudged according to its own unique facts and circumstances, and there is no inflexible rule that evidence found only on a single occasion cannot be sufficient to show a crime of a continuing nature.

(Citation and punctuation omitted.) *Chua v. State*, 289 Ga. 220, 230 (1) (c) (710 SE2d 540) (2011).

Here, although the evidence described above shows that the house at 307 East Jenkins was used mainly for the distribution of drugs, there is no evidence that Scott knowingly kept or maintained the house. While Scott told officers that he did yard work at the property, by its plain language, OCGA § 16-13-42 (a) (5) proscribes only the keeping or maintaining of a structure, not grounds-keeping. Moreover, the trial evidence does not show that Scott was inside the residence prior to the execution of the search warrant or that he had ever been inside the house at all. Consequently, the evidence was insufficient to sustain his conviction under OCGA § 16-13-42 (a) (5) (Count 4).

3. In light of our holdings in Divisions 1 and 2, it is unnecessary to address Scott's remaining enumerations of error.

*Judgment reversed. Barnes, P. J., and Ray, J., concur.*