**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 9, 2014**

# In the Court of Appeals of Georgia

A14A0337. STEWART v. THE STATE.

DILLARD, Judge.

Following a trial by jury, Kayla Stewart was convicted of possession of cocaine.[1] On appeal, Stewart contends that the evidence was insufficient to sustain her conviction. We agree and, accordingly, reverse.[2]

Viewed in the light most favorable to the jury's verdict,[3] the record shows that Stewart and her then-boyfriend, Robert Beasley, and Beasley's friend, Natdaniel

---

[1] Stewart was tried with Robert Beasley, whose appeal we address separately in Case Number A14A0636.

[2] Because we reverse Stewart's conviction for insufficient evidence, we do not address her second enumeration of error, which is that the trial court erred in denying her motion to suppress evidence.

[3] *See, e.g.*, *Castillo v. State*, 288 Ga. App. 828, 828 (655 SE2d 695) (2007).

Whetstone, were indicted for trafficking cocaine.[4] This indictment resulted from law enforcement's discovery of drugs in a Newnan hotel room that Stewart and Beasley shared on December 24, 2011, after responding to a call from the hotel. Stewart, who still lived in her parents' home, informed law enforcement that she rented the room so that she and Beasley could spend some time together. At 10:00 p.m., however, Stewart decided to leave the hotel because she was frustrated by constant interruptions from Beasley's friends, including Whetstone. Beasley remained in the room with Whetstone until approximately 11:00 p.m., when the two left the premises to go shoot pool.

At trial, Whetstone—who testified for the State in exchange for dismissal of the charges against him—noted that prior to leaving the hotel room, Beasley smoked marijuana, which he pulled from a white bag that was inside the hotel-room microwave. Beasley informed Whetstone that the bag contained "yams," which

---

[4] *See* OCGA § 16-13-31 (a) (1) ("Any person who sells, manufactures, delivers, or brings into this state or who is in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine . . . commits the felony offense of trafficking in cocaine . . . .").

Whetstone understood to mean cocaine.[5] Whetstone also observed Beasley remove cash from a drawer.

According to Whetstone, after getting into his car to leave, Beasley noticed law enforcement arriving at the hotel, and, as a result, he asked Whetstone to circle the building to see if officers were going inside of his room. Then, not long after driving away from the hotel, the two men were stopped by law enforcement after officers entered the room and discovered marijuana, cocaine, and a large stack of cash, all in plain view.[6] Stewart was apprehended later, and she and Beasley were subsequently

---

[5] *See* URBAN DICTIONARY, http://www.urbandictionary.com/define.php?term=YAM (retrieved June 25, 2014) (defining "yams" as, *inter alia*, a "street name for a type of drug, . . . ounces of coke [i.e., cocaine]" (citing YOUNG JEEZY, *And Then What?* (feat. Mannie Fresh), *on* LET'S GET IT: THUG MOTIVATION 101 (Corporate Thugs/Def Jam Records 2005) ("First I'm going stack my flo'/(And then what?)/Then I'm going stack some mo'/(And then what?)/Close shop then I do my count/Hide the rest of the *yams* at my auntie house." (emphasis supplied))).

[6] Specifically, an officer saw suspected marijuana residue on a table, the remainder of a smoked marijuana cigarette, and items commonly used to package and smoke marijuana. The table drawer was also open, revealing a large stack of cash. And next to the table was a microwave sitting ajar, which contained multiple baggies of suspected rock and powder cocaine. The bags were later confirmed to contain 37.46 grams of cocaine, with two bags tested and confirmed to contain cocaine that was 37.6 percent pure and 43.4 percent pure, respectively.

tried and convicted, although the jury convicted Stewart of the lesser offense of simple possession.[7] This appeal follows.

In her brief, Stewart contends that the evidence is insufficient to sustain her conviction when the sole evidence linking her to the discovered contraband was her rental of the hotel room and her presence in the room at times throughout the evening. We agree.

It is undisputed that Stewart did not actually possess the drugs and, therefore, the issue is whether she was in joint constructive possession of the drugs. And as we have previously explained, that question turns on whether Stewart and the other defendants "knowingly shared the power and intention to exercise dominion or control over [the drugs]."[8] But mere "spatial proximity" to contraband is not sufficient to prove constructive possession.[9] Instead, the State must show that the

---

[7] *See* OCGA § 16-13-30 (a) ("Except as authorized by this article, it is unlawful for any person to purchase, possess, or have under his or her control any controlled substance."); *Smith v. State*, 323 Ga. App. 668, 669 (1) (747 SE2d 859) (2013) ("Since the indictment in this case alleged that [the defendant] possessed more than 28 grams of cocaine, simple possession of cocaine was a lesser offense included as a matter of fact in the charged offense of cocaine trafficking.").

[8] *Scott v. State*, 326 GA. App. 115, 117 (1) (756 SE2d 220) (2014) (punctuation omitted).

[9] *Id.*

4

defendant had "the power and intent to exercise control over the drugs, which requires evidence of some meaningful connection between the defendant and the drugs."[10] And it is well established that "[m]ere presence where contraband is found when others have equal access to the substance is insufficient to support a conviction."[11] Indeed, when it is affirmatively shown that others had "equal access or opportunity to commit the crime, a defendant's mere presence at premises where contraband is discovered, without more, is insufficient to support a conviction."[12]

Here, the evidence—which included a surveillance video, video still-shots of the hotel hallway, and a registration record—shows that Stewart rented the hotel room for the use of two occupants; that she arrived at the hotel with Beasley on the evening in question; that the two carried their belongings into the room at approximately 7:00 p.m.; and that she left the property at various points, the final time being at 10:00 p.m.

---

[10] *Id.* (punctuation omitted).

[11] *Stringer v. State*, 275 Ga. App. 519, 521 (621 SE2d 761) (2005); *see also Person v. State*, 155 Ga. App. 106, 107 ("[M]erely finding contraband on premises occupied by a defendant is not sufficient to support a conviction if it affirmatively appears from the evidence that persons other than the defendant had equal opportunity to commit the crime." (punctuation omitted)); *Blankenship v. State*, 135 Ga. App. 482, 483 (218 SE2d 157) (1975).

[12] *Stringer*, 275 Ga. App. at 521 (punctuation omitted); *see also Person*, 155 Ga. App. at 107.

Moreover, according to Whetstone, the first time he visited Beasley at the hotel on the evening of December 24, Stewart was picking up takeout food. And Stewart left the room for good at approximately 10:00 p.m., when Whetstone visited for a second time and Beasley informed Stewart that he was going to shoot pool with Whetstone.

Stewart later informed law enforcement that she rented the room in order to spend time alone with Beasley and that she left because she was upset by constant interruptions from Beasley's friends. And Whetstone testified that it was only *after* Stewart left the room that Beasley retrieved marijuana from the microwave in the room, indicated that the microwave contained cocaine, smoked the marijuana, and retrieved cash from a drawer.[13] Put another way, Whetstone affirmatively testified that no contraband was in plain view when Stewart was in the room.[14] Additionally, it was only *after* Stewart left that law enforcement was called to the hotel with regard to concerns that the occupants of the room were smoking marijuana and, upon entering the hotel, noticed a smell of burning marijuana emanating from the vicinity of the

---

[13] *See Stringer*, 275 Ga. App. at 521 (noting, in reversing conviction, that "there was no evidence that the nightstand drawer, which contained the cocaine, or the dresser drawers were ever open at any time that [the defendant] may have been in the room").

[14] *See id.*

room. Accordingly, there was no evidence linking Stewart to the contraband that was discovered by law enforcement, save her rental of and earlier presence in the room.[15]

---

[15] *See Stringer*, 275 Ga. App. at 521-22 ("[T]here is no evidence connecting [the defendant] with the cocaine other than his presence at the hotel and the fact that he registered the room in his name. Neither of these two facts is sufficient to connect [the defendant] with the crime."); *Person*, 155 Ga. App. at 107 ("As there is nothing other than [the defendant's] presence in the room to connect him to the contraband, the evidence is not sufficient to support his conviction."); *Granger v. State*, 142 Ga. App. 612, 613 (1) (236 SE2d 762) (1977) (reversing conviction when "[a]ll that the [S]tate proved was that another defendant . . . had the sole possession of the controlled substances" found in a hotel room). *Cf. Conyers v. State*, 302 Ga. App. 95, 97 (1) (690 SE2d 233) (2010) (affirming conviction when room was rented in defendant's name; defendant made statements to undercover officer that indicated his knowledge that hotel room contained drugs; and defendant invited undercover officer into room to purchase drugs, and drugs and paraphernalia were in plain view upon entering); *Glass v. State*, 304 Ga. App. 414, 419 (3) (696 SE2d 140) (2010) ("[I]n addition to evidence that [the defendant] rented Room 248, had a key to the suite, and was going to the suite at a time when a great quantity and variety of drugs were in open view, there was other evidence linking him to the contraband found there, including his suspicious behavior upon seeing officers near the suite and the presence of his personal property inside the suite."); *Nelson v. State*, 305 Ga. App. 425, 427 (1) (699 SE2d 783) (2010) (holding that the evidence supported a finding that the defendant "was present in the small hotel room filled with drugs and drug paraphernalia in plain view during at least three drug transactions that occurred within a two-hour period, that he possessed the two marked bills taken from the informant and the $50 bills taken from the undercover officer, and that he alone possessed the cash proceeds from the drug sales, that he permitted [a co-defendant] to give out his cell phone number so that the undercover officer could make future drug deals with them, that he lied about his identity to the police, and that he previously had been convicted of a similar crime"); *Hall v. State*, 283 Ga. App. 266, 268 (641 SE2d 264) (2007) (rejecting contention that defendant was unaware of drugs in hotel room when, *inter alia*, "the marijuana that prompted [his] arrest was lying on the bed practically on top of [his] money clip and a handgun that [he]

And there was affirmative evidence that others had equal access to the room, rebutting as a matter of law any presumption of possession arising from the fact that Stewart rented the room in her name.[16] For all of these reasons, we reverse Stewart's conviction.

*Judgment reversed. Doyle, P. J., and Miller, J., concur.*

---

admitted was his," a "pipe and second handgun were also on the bed in plain view," and "a third weapon that [he] claimed was not his was found in the drawer of a nightstand with [his] billfold").

[16] *See Stringer*, 275 Ga. App. at 522 ("Without admissible evidence linking [the defendant] to the cocaine and given the affirmative evidence of equal access by [a co-defendant], any presumption of possession arising from the fact that [the defendant] rented the hotel room in his name has been rebutted as a matter of law.").