**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J., and BOGGS, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 7, 2015**

# In the Court of Appeals of Georgia

A15A0488. MORALES v. THE STATE.

PHIPPS, Presiding Judge.

Ricardo Morales was found guilty of trafficking methamphetamine, possession of methamphetamine with intent to distribute, possession of methamphetamine, possession of marijuana with intent to distribute, and possession of marijuana (more than one ounce),[1] in connection with drugs found in a residence he had been visiting. Morales appeals following the denial of his motion for new trial, contending that the

---

[1] The indictment included the following charges against Morales: Count 1 - trafficking methamphetamine, by possessing more than 28 grams of a mixture containing methamphetamine (OCGA § 16-13-31 (e)); Count 2 - possession of methamphetamine with intent to distribute (OCGA §§ 16-13-30 (b); 16-13-26 (3)); Count 3 - possession of methamphetamine (OCGA § 16-13-30 (a)); Count 4 - possession of marijuana with intent to distribute (OCGA § 16-13-30 (j)); and Count 5 - possession of marijuana, more than one ounce (OCGA §§ 16-13-30 (a), (j) (1); 16-13-2 (b)). At sentencing, Counts 1 and 3 merged with Count 2, and Count 5 merged with Count 4. Thus, Morales was sentenced on only Counts 2 and 4.

evidence was insufficient to sustain his convictions, and that he received ineffective assistance of counsel. Because the evidence was not sufficient, we reverse the convictions.

1. Morales asserts that the evidence was insufficient because the state failed to prove that he possessed any of the drugs. We agree.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence. We determine only whether the evidence authorized the jury to find the defendant guilty beyond a reasonable doubt, and in doing so we neither weigh that evidence nor judge the credibility of the witnesses.[2]

So viewed, the trial evidence showed the following. Law enforcement officers testified that in January 2009, they were conducting a surveillance of two residences on a particular street. James Senft and Cynthia Smith lived in one of the residences (hereafter the Senft residence),[3] and Morales lived in the other residence, which was across the street. After seeing a black truck for which they had been on the lookout

---

[2] *Castillo v. State*, 288 Ga. App. 828 (655 SE2d 695) (2007) (citations and punctuation omitted).

[3] Senft and Smith were indicted along with Morales on the drug charges. Morales and Senft were tried together; Smith pled guilty prior to trial.

arrive at and leave the Senft residence, officers initiated a stop of that vehicle, then searched the driver, M. T. The search revealed methamphetamine, and the driver was arrested.

On February 26, 2009, officers resumed their surveillance and conducted a controlled drug purchase at the Senft residence. One of the officers then applied for and obtained a "no-knock" warrant to search that residence.

Meanwhile, officers who had continued the surveillance saw two men arrive at the Senft residence in separate vehicles; one of the men, Morales, was in a silver or gold sport utility vehicle, and the other man, Senft, was in a white truck. Morales and Senft entered the residence and, from what the officers were able to observe from their vantage point down the street, walked down a hallway toward the rear of the Senft residence. "[A] little while" later, a third man, Jerry Craig Bradshaw, arrived, entered the residence and walked toward the rear of the residence. "[W]ithin a few minutes" - without knocking or announcing "police"- officers threw a "flashbang" device into the Senft residence as "a distraction," and entered the front room. The officers detained Senft and Smith, the only (non-law enforcement) individuals in the residence. Morales and Bradshaw had fled through a back door of the residence "as

3

the flashbang was going off." Officers chased and apprehended Bradshaw as he fled, but they were unable to apprehend Morales that night.

Officers searched a bedroom at the rear of the Senft residence. The bedroom was "full of junk," and "[j]ust cluttered with everything." Officers found in the bedroom a Ziploc bag containing 15.68 ounces of marijuana; the bag was on a bedspread or pillow on the floor. About one foot away from the bag of marijuana was a Ziploc bag containing 108.17 grams of methamphetamine; that bag was also on the floor of the bedroom, beside "a blanket or something that was all jumbled up," under a chair. Scales, baggies, and drug paraphernalia were found in the living room. The officers searched the home's three occupants, and found $2,927 cash on Senft's person, $700 cash on Smith's person, and $1,616 cash on Bradshaw's person.

Testifying on behalf of the state, Smith stated that on the date of the search, Morales and Senft had entered the Senft residence and walked to a bedroom in the back of the house, while she was in the front room of the residence. Bradshaw had also gone to that bedroom. Smith testified that she had not seen what the three men were doing in the bedroom, and that the bedroom door was closed; that the officers had entered the residence a few minutes after the three men entered, while she was

4

in another bedroom; and she believed that Morales and Bradshaw had exited through the back door of the residence.

In order to prove the drug charges brought against Morales, the state was required to prove that he had possessed the methamphetamine and marijuana (in the required amounts, as specified in the indictment).[4] Where, as here, the state provided no direct evidence that Morales had actual possession of the drugs, the state was required to prove that he had constructive possession thereof.[5]

> To prove constructive possession, the state is required to show that although not in actual possession, the defendant knowingly had both the power and the intention at a given time to exercise control over the drugs. Evidence merely showing that contraband was found in a residence occupied by the defendant is not sufficient to support a conviction, especially where other persons had equal access to the contraband and therefore an equal opportunity to commit the offense.[6]

"Mere spatial proximity to contraband is not sufficient to prove constructive possession. Rather, the [s]tate must show that [Morales] had the power and intent to

---

[4] See n. 1, supra; see also OCGA §§16-13-30 (a) (b) (j) (2009); 16-13-31 (e) (2009).

[5] See *Johnson v. State*, 282 Ga. App. 52, 54 (1) (637 SE2d 775) (2006).

[6] Id. (footnotes omitted); see *Vines v. State*, 296 Ga. App. 543, 545 (1) (675 SE2d 260) (2009).

5

exercise control over the drugs, which requires evidence of some meaningful connection between the defendant and the drugs."[7]

Morales did not own or lease the Senft residence, and had merely been a visitor there. Consequently, there is no presumption that he possessed the drugs found in the Senft residence.[8]

Although Morales was in the Senft residence just before the officers conducted the search, he had arrived only minutes earlier; and there was no evidence that he had possessed the drugs while there, or had carried the drugs into the residence. Additionally, there was no evidence that the officers found anything in the residence "that linked [Morales] to the residence such as clothing, bills, fingerprints, financial statements, photographs, records, books, or other personal belongings."[9] Nor was there evidence that the officers found drugs, cash or other evidence on Morales's

---

[7] *Scott v. State*, 326 Ga. App. 115, 117 (1) (756 SE2d 220) (2014) (citation and punctuation omitted).

[8] Cf. *Bailey v. State*, 294 Ga. App. 437, 439-440 (1) (669 SE2d 453) (2008) (where evidence shows that a defendant owned or controlled premises where contraband was found, it gives rise to a rebuttable presumption that the defendant possessed the contraband).

[9] *Brown v. State*, 285 Ga. App. 330, 332 (646 SE2d 273) (2007).

person linking him to the contents of the Senft residence.[10] Indeed, several other people were present at the residence when the drugs were discovered, such that other persons had equal (or greater) access to the contraband and equal (or greater) opportunity to commit the crimes.[11] There was no evidence that the marijuana and methamphetamine found in Ziploc bags (one bag was on top of a bedspread or pillow on the floor, and the other was "beside a blanket or something that was all jumbled up," under a chair on the floor in the cluttered bedroom), would have been plainly visible to Morales, or that Morales had the power and intention to exercise control over the drugs while he was in the bedroom.

That Morales fled when officers - who had not identified themselves as police officers - entered without knocking and threw a "flashbang" device into the Senft residence, was not sufficient evidence to support the guilty verdict, as it is well established that neither presence at the scene nor flight, nor both together, without more, is conclusive evidence of guilt.[12]

---

[10] See id.

[11] See *Johnson*, supra.

[12] Id.

7

Finally, Morales's convictions cannot be upheld on the ground that he was a party to the crimes, because the state failed to present evidence that he intentionally caused another to commit the crimes, aided or abetted in the commission of the crimes, or advised or encouraged another to commit the crimes.[13] There was no evidence that Morales had participated in the criminal activity that had occurred on the property.[14] Consequently, the state's evidence did not show essential links between Morales's conduct and the drug possession, trafficking and intent to distribute charges.[15] Therefore, his convictions must be reversed.[16]

---

[13] See *Scott*, supra.

[14] See id.; *Crenshaw v. State*, 183 Ga. App. 527, 529 (1) (359 SE2d 419) (1987).

[15] See, e.g., *Flores v. State*, 308 Ga. App. 368, 373 (4) (707 SE2d 578) (2011) (defendant's mere presence in vehicle, which he did not own or control and in which methamphetamine was found, was insufficient to sustain his conviction for trafficking methamphetamine; the state had failed to present evidence of some meaningful connection between the defendant and the drugs); *Brown*, supra at 332-333 (even though defendant had arranged a drug deal for a confidential informant, defendant's presence outside the residence was insufficient to sustain his conviction for trafficking cocaine where no evidence linked the defendant to the property or to the drugs found inside); *Stringer v. State*, 275 Ga. App. 519, 521-522 (621 SE2d 761) (2005) (reversing conviction for possession of cocaine where no evidence linked defendant to cocaine found in hotel room other than fact that the defendant was in the room and it was registered in his name). Compare *Lott v. State*, 303 Ga. App. 775, 779 (1) (694 SE2d 698) (2010) (evidence supported possession for trafficking conviction even though the two defendants did not own or rent the house where the

2. In light of our holding in Division 1, it is unnecessary to address Morales's claim that he received ineffective assistance of trial counsel.

*Judgment reversed. Doyle, C. J., and Boggs, J., concur*.

---

drugs were found, because there was evidence that: the defendants were in the house when it was searched; they had keys to the house, they were depicted in photographs that appeared to have been taken inside the house; one defendant ran toward the bedroom where the drugs were found; officers executing the search warrant found the defendants' personal items inside the residence; an individual arrested for selling drugs told officers he had bought the drugs at that house from a man known as "Boogie"; and when an officer called out that name, one of the defendants answered).

[16] See *Scott*, supra at 119 (1).