**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**August 9, 2016**

# In the Court of Appeals of Georgia

A16A1224. JOHNSON v. THE STATE.

PHIPPS, Presiding Judge.

Following a jury trial, Andre William Johnson was convicted of trafficking in cocaine and possession of drug-related objects.[1] Johnson appeals from the denial of his motion for new trial. He challenges the sufficiency of the evidence supporting his trafficking conviction. Finding no error, we affirm.

> When reviewing a defendant's challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a

---

[1] OCGA §§ 16-13-31 (trafficking in cocaine); 16-13-32.2 (possession of drug-related objects). The jury also found Johnson guilty of possession of cocaine with intent to distribute (OCGA § 16-13-30 (b)), but the trial court merged this count with the trafficking conviction for sentencing purposes.

rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[2]

Viewing the evidence in the light most favorable to the jury's verdict, it shows that on February 7, 2012, the Glynn-Brunswick Narcotics Enforcement Team executed a search warrant at a residence located at 3412 Lee Street in Brunswick. Officers knocked on the door. When no one answered, the officers proceeded to break down the door.

Meanwhile, another officer approached the back door, walking to the right of the house, past a vehicle parked in the driveway. As the team at the front of the house attempted to gain entry, the officer walking around to the back of the house could see people inside, playing video games. As the officer made his way to the back corner of the house, he heard people scrambling and moving around. Then the officer observed at least five men, including Johnson, jump out of a window at the back of the house and start running. As the men ran, a few of them had their hands up in the air, and the officer observed cocaine going in all directions, with crack cocaine falling

---

[2] *Pye v. State*, 322 Ga. App. 125, 126 (1) (742 SE2d 770) (2013) (footnote omitted). See also *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LEd2d 560) (1979).

onto the back deck and in the back yard. The officer described the deck as "covered in crack cocaine."

From the deck, the men ran to a chain-link fence at the edge of the back yard, climbed over the fence, and continued running. The officer yelled at the men to stop and gave chase. The officer jumped the fence and observed Johnson, who had fallen on the ground. The officer apprehended Johnson, who said, "I give up." While handcuffing Johnson, the officer noticed a bag of crack cocaine within Johnson's arm's reach, less than two feet away. The officer frisked Johnson and located his identification. At trial, the officer identified Johnson as the man he arrested, and another officer who had been at the scene also identified Johnson.

After entering the house, police walked into the kitchen, which opened into the living room and led into a back bedroom. When police entered the kitchen, they discovered a large beaker on the stove "actively cooking" powder cocaine, water, and baking soda to make crack cocaine. Officers also seized two baggies, each containing approximately 30 grams of powder cocaine, and individual baggies of crack cocaine from the kitchen. Officers also discovered gloves, a digital scale and additional baggies to package the cocaine for distribution, and two hand-held radios, which are often used to alert drug dealers to the presence of police.

Police also observed crack cocaine in the doorway between the living room and the back bedroom, on and underneath the back deck, and in the back yard. Officers retrieved just over 25 grams of cocaine from the back yard. The drugs seized from the house were tested by the Georgia Bureau of Investigation ("GBI"). One package of cocaine weighed 23 grams, and another weighed 4.34 grams. A third package weighed 64.57 grams; GBI tested it for purity and determined it to be 59 percent cocaine.

Following his apprehension at the scene, police interviewed Johnson, who waived his *Miranda* rights.[3] Although Johnson gave police a different home address, he admitted that he had been staying at the house on Lee Street and had some belongings in the front room. Police found personal belongings, including a laptop computer and items of clothing, in the front bedroom of the house.

Johnson contends that the State failed to establish that he had either actual or constructive possession of the cocaine as required to support his conviction for trafficking.

Where, as here,

---

[3] See *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

the conviction is based on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt but shall exclude every other reasonable hypothesis save that of the guilt of the accused. Whether or not in a given case circumstances are sufficient to exclude every reasonable hypothesis save the guilt of the accused is primarily a question for determination by the jury.[4]

In order to prove the trafficking charge, the State was required to prove that Johnson had possessed at least twenty-eight grams of cocaine, with a purity of ten percent or more.[5] "Where the [S]tate provides no direct evidence of actual possession, a conviction may be sustained with proof of constructive possession."[6] "[A] finding of constructive possession must be based upon some connection between the defendant and the contraband other than mere spatial proximity."[7]

Constructive possession exists where a person though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing. If the State presents

_____

[4] *Howard v. State*, 291 Ga. App. 386, 388 (662 SE2d 203) (2008) (citation and emphasis omitted).

[5] See OCGA § 16-13-31 (a).

[6] *Johnson v. State*, 282 Ga. App. 52, 54 (1) (637 SE2d 775) (2006) (footnote omitted).

[7] *O'Neill v. State*, 285 Ga. 125, 128 (674 SE2d 302) (2009) (citation omitted).

evidence that a defendant owned or controlled premises where contraband was found, it gives rise to a rebuttable presumption that the defendant possessed the contraband. Although this presumption may be rebutted by showing that others had access to the premises, the equal access doctrine applies to rebut the presumption of possession only where the *sole* evidence of possession of contraband found on the premises is the defendant's ownership or possession of the premises.[8]

Furthermore, although "[m]ere presence at the scene is not sufficient to convict one of being a party to a crime, . . . criminal intent may be inferred from conduct before, during, and after the commission of a crime."[9]

Johnson argues that the State failed to produce any evidence that he resided at 3412 Lee Street, but this argument is without merit. Essentially, Johnson challenges the credibility of the officer's testimony that Johnson admitted he had been staying there, but "[i]t was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence."[10] Although Johnson's mother testified that he spent his nights at her home and Johnson gave police an

---

[8] *Taylor v. State*, 303 Ga. App. 88, 90-91 (693 SE2d 118) (2010) (citation and punctuation omitted).

[9] *Buruca v. State*, 278 Ga. App. 650, 652 (1) (629 SE2d 438) (2006).

[10] *Pye*, supra at 127 (1) (punctuation and footnote omitted).

alternate home address, he also told police that he had been staying at the house on Lee Street, and the evidence showed that he was keeping some of his belongings in the front bedroom. Thus, the evidence was sufficient for the jury to find that Johnson was staying at the house.[11]

Johnson also argues that there was no evidence that he had physical control over any of the contraband found in the house and that the mere fact that he was arrested outside of the house, with drugs within his arm's reach, is insufficient to establish possession. Although Johnson cites to several cases to support his position, his argument is unavailing. This is not a case in which the sole evidence of drug possession was the fact that Johnson was present at or near a house where drugs were discovered.[12]

---

[11] See *Lott v. State*, 303 Ga. App. 775, 779 (1) (694 SE2d 698) (2010) (evidence showed that the defendants were staying on premises where drugs were found even though they did not own or rent the premises).

[12] Cf. *Holland v. State*, 334 Ga. App. 600, 604 (1) (780 SE2d 40) (2015) (physical precedent only) (finding insufficient evidence of possession where the defendant did not live in the house where hidden drugs were discovered and evidence showed, at most, that the defendant "had momentary access to the master bedroom just before contraband was found there"); *Stewart v. State*, 328 Ga. App. 78, 80 (761 SE2d 497) (2014) (where the defendant rented a hotel room where drugs were found, but others had access to the room, she left the room before drug sales occurred, and she was not otherwise connected with any contraband, the evidence was insufficient to support her conviction for drug possession); *Scott v. State*, 326 Ga. App. 115, 118

Rather, the evidence showed that Johnson had been staying at the house on Lee Street, and, when police arrived, Johnson was inside the house during an active cook of crack cocaine.[13] Johnson fled, along with several other people, some of whom were throwing cocaine in the air during their escape. Police apprehended Johnson immediately after he jumped the back yard fence and found drugs within his arm's reach, and Johnson made an inculpatory statement.[14] Thus, the evidence in this case was sufficient to establish that Johnson had constructive possession of the large

---

(1) (756 SE2d 220) (2014) (evidence was insufficient to support conviction for trafficking where the defendant was merely standing in the yard of the house where drugs were found, but nothing linked the defendant to the house or the drugs found there); *Brown v. State*, 285 Ga. App. 330, 332 (646 SE2d 273) (2007) (same). See also *Cobarrubias-Garcia v. State*, 316 Ga. App. 787, 790-791 (730 SE2d 455) (2012) (physical precedent only) (finding insufficient evidence of possession where it was "undisputed" that the defendant did not live in the house and no evidence linked the defendant to the drugs hidden there).

[13] Cf. *Aquino v. State*, 308 Ga. App. 163, 167 (1) (706 SE2d 746) (2011) (finding insufficient evidence of possession where the defendant had earlier opened the door to a house which contained large quantities of methamphetamine and was later discovered in the driveway, but was not an occupant of the house and "[h]e was never seen in proximity to the drugs or drug-making equipment").

[14] Although Johnson asserts that he was arrested in the back yard — where lots of contraband had been thrown — the evidence shows that Johnson was not arrested in the back yard, but on the other side of the fence, and there is no indication that there was any additional contraband found there, aside from that found within his arm's reach.

quantity of cocaine found in the house.[15] Accordingly, the jury was permitted to exclude every other reasonable hypothesis save that of guilt, and the evidence was sufficient to sustain Johnson's conviction for trafficking.[16]

*Judgment affirmed. Dillard and Peterson, JJ., concur.*

---

[15] See *Glass v. State*, 304 Ga. App. 414, 419 (3) (696 SE2d 140) (2010) (finding sufficient evidence of possession where defendant had rented a hotel room, kept personal belonging in the room, was walking to the room where a "great quantity" of drugs were "in open view," and then tried to turn around and walk away when he saw police); *Kirby v. State*, 275 Ga. App. 216, 217 (620 SE2d 459) (2005) (where the defendant leased the house and was present during widespread methamphetamine manufacturing, evidence was sufficient to establish possession). See also *Lott*, supra (finding sufficient evidence of constructive possession where defendant was staying in the house where drugs were found and screamed when the police raided the house, and police found a large amount of cash in her wallet).

[16] See *Glass*, supra; *Lott*, supra; *Blue v. State*, 275 Ga. App. 671, 672, 674 (2) (621 SE2d 616) (2005) (finding sufficient evidence to support trafficking conviction where, when police arrived to execute a search warrant after observing drug sales, police heard people running, stove was warm, the defendant and his wife were leaving the bathroom, and toilet pipes contained a large quantity of crack cocaine); *Kirby*, supra.