**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 24, 2019**

# In the Court of Appeals of Georgia

A19A0601. GUERRERO-MOYA v. THE STATE.

BARNES, Presiding Judge.

Following the denial of his motion for new trial, as twice amended, Ismael Guerrero-Moya appeals his jury convictions for trafficking in methamphetamine and possession of a firearm during the commission of a crime. On appeal, Guerrero-Moya contends that the trial court erred by instructing the jury that he was a co-conspirator, and then failing to properly instruct the jury on the law of conspiracy. He also asserts two instances in which he maintains that trial counsel rendered ineffective assistance. Following our review, we affirm.

On appeal, this Court views the evidence in the light most favorable to the jury's verdict. See *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004). So viewed, the evidence demonstrates that on June 11, 2010, a special agent with the

Fayette County Sheriff's Department received a call from an Immigration and Customs Enforcement ("ICE") agent regarding a residence that was purportedly being used to "wash" methamphetamine. According to the ICE agent, the information was provided by a confidential informant who advised that individuals in the home were washing approximately 3.5 pounds of methamphetamine. The ICE agent further informed the special agent that a white Dodge pickup truck was parked at the residence, and that the same vehicle was seen at the home the previous day.

After surveilling the residence for approximately 90 minutes, officers conducted a "knock-and-talk" at the residence. When the special agent and two other officers knocked on the door of the residence two men answered. The officers informed the men that they had received information about possible drug activity at the home, and asked if they could come inside. The men "gave [the officers] . . . a sweeping motion with their hands, [and] moved out of the way." There was no furniture in the living room, and the room had a "prominent" odor of acetone. An officer asked one of the men to talk with him in the kitchen, and while there the officer observed strainers, scales, glassware, pot, pans, and methamphetamine residue, which indicated to the officer that "there was methamphetamine being produced there." The officer also noticed from his viewpoint in the kitchen, a

2

bedroom containing a tub filled with methamphetamine and a firearm laying next to a mattress. The officer was only "three or four feet away from the [bedroom's] doorway" and the items were in plain view. Guerrero-Moya emerged from the bedroom. The officer testified that Guerrero-Moya was within arms reach of the firearm that was seen near the mattress in the bedroom. Guerrero-Moya and the two men were arrested. Police secured a search warrant for the residence, and seized three and one half pounds of methamphetamine, acetone, Tupperware containing suspected methamphetamine residue, a knife with suspected methamphetamine residue, a firearm with ammunition, and other drug related items.

When interviewed by police, Guerrero-Moya acknowledged that he knew about the methamphetamine, but that he had arrived at the residence only 30 minutes before the officers to watch a soccer game. A co-indictee, Ulvado Alverado-Tequilla, testified that Guerrero-Moya was just a visitor and had nothing to do with the methamphetamine at the residence.

1. Although not challenged by Guerrero-Moya, we find the evidence sufficient pursuant *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), to find the appellant guilty of the crimes charged.

3

2. Guerrero-Moya contends that it was plain error for the trial court in its instruction to refer to the appellant as a co-conspirator, and to not properly instruct the jury on the law of conspiracy. The trial court instructed the jury as follows: "Any out-of-court statement made by one of the defendants or any co-conspirator on trial on this case after the alleged criminal act has ended may be considered only against the person who made the statement." According to Guerrero-Moya, although not objected to, the instruction constituted plain error because the trial court instructed the jury that statements made by a co-conspirator could be used against him, but at no point instructed the jury on what constituted a conspiracy or that it was for the jury to determine if a conspiracy existed. He also contends that by so instructing the jury, the trial court essentially charged that a conspiracy existed and that the appellant was a participant, impermissibly removing that ultimate determination from the jury's province.

As acknowledged by Guerrero-Moya, the failure to object regarding a jury instruction at trial precludes appellate review unless "the jury charge constitutes plain error which affects substantial rights of the parties." OCGA § 17-8-58 (b); *State v. Kelly*, 290 Ga. 29, 32 (1) (718 SE2d 232) (2011) ("[A]ppellate review for plain error

is required whenever an appealing party properly asserts an error in jury instructions.")

> The "plain error" test adopted . . . in *State v. Kelly* . . . authorizes reversal of a conviction if the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affected the fairness, integrity or public reputation of judicial proceedings. Satisfying all four prongs of this standard is difficult, as it should be.

(Citations and punctuation omitted.) *Lake v. State*, 293 Ga. 56, 59 (5) (743 SE2d 414) (2013). However.

> even when plain error appears, which we do not decide here, reversal is not required if the defendant invited the alleged error. . . . [A]ffirmative waiver, which involves the intentional relinquishment or abandonment of a known right, as opposed to mere forfeiture by failing to object, prevents a finding of plain error.

(Citations and footnote omitted.) *Nelson v. State*, 325 Ga. App. 819, 820-821 (755 SE2d 217) (2014).


Guerrero-Moya requested that the trial court charge the jury as follows: "The confession of one joint offender or conspirator made after the enterprise is ended shall

5

be admissible only against himself." Although not the identical language of the charge given, the language which Guerrero-Moya now finds objectionable- essentially use of the word co-conspirator- was requested by Guerrero-Moya.

> A party cannot invite error by requesting a certain jury instruction, and then complain on appeal that the instruction, when given, is incorrect. Accordingly the trial court did not err by denying [Guerrero-Moya's] motion for new trial on this basis.

(Citation and punctuation omitted.) *Nelson*, 325 Ga. App. at 821.

3. Guerrero-Moya also contends that trial counsel was ineffective for failing to object to certain testimony, and failing to request a jury charge on the presumption of ownership. We do not agree.

"To prevail on a claim of ineffective assistance of counsel, a criminal defendant must prove that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different." *Davis v. State*, 267 Ga. App. 245, 245-246 (1) (599 SE2d 237) (2004). Also,

> a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the Appellant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an

6

ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

(Punctuation and footnote omitted.) *Whatley v. State*, 342 Ga. App. 796, 799-800 (3) (805 SE2d 599) (2017).

a. Guerrero-Moya asserts that trial counsel rendered ineffective assistance when he failed to object to the following testimony by a law enforcement agent (referencing trafficking organizations):

Normally you have to be associated with or be participating in the actual trafficking. They don't allow strangers. They don't allow unknown people to enter the residence or apartments or whatever the case may be. Only because it is a large amount of money they're dealing with and product, that if they would let unknown people in there, security risks would increase.

Guerrero-Moya maintains that the testimony impermissibly invaded the province of the jury, bolstered the prosecution's case, and "destroyed" his sole defense of mere presence."

We have held that similar "testimony about large-scale trafficking in narcotics was 'beyond the ken' of the average juror," and further can be "relevant to the facts of the case to describe the sequence of events." *Lopez v. State*, 267 Ga. App. 532, 535

7

(1) (601 SE2d 116) (2004). Accordingly, any objection to the testimony would have been futile and trial counsel "cannot be adjudged ineffective for failing to object to it." (Citation and punctuation omitted.) *Latta v. State*, 341 Ga. App. 696, 705 (5) (a) (802 SE2d 264) (2017).

b. Guerrero-Moya also contends that trial counsel was ineffective for failing to request a jury charge on presumption of ownership. He argues that, other than his presence, there was no other evidence connecting him to the drugs in the home and that by failing to charge the jury that there is a presumption that the drugs belonged to the homeowner and co-indictee, Alverado-Tequilla, the outcome of the trial was compromised.[1] According to Guerrero-Moya, the jury could have concluded that the evidence against him was weak had they been informed on the legal presumption that the drugs belonged to the homeowner, Alverado-Tequilla.

At the hearing on the motion for new trial, Guerrero-Moya's trial counsel testified that he did not have a strategic reason for not asking for a charge on presumption of ownership. Pretermitting whether such omission evinced deficient performance, Guerrero-Moya has not demonstrated that "the deficient performance

---

[1] The co-indictee testified that the home belonged to him and that Guerrero-Moya did not live there.

8

so prejudiced [him] that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different." *Davis*, 267 Ga. App. at 245-246 (1). See *Propst v. State,* 299 Ga. 557, 565 (3) (788 SE2d 484) (2016) ("If the defendant fails to satisfy either prong of the *Strickland* test, this Court is not required to examine the other.") , overruled in part on other grounds, *Worthen v. State*, 304 Ga. 862 (823 SE2d 291) (2019). The jury heard Alverado-Tequilla's testimony that he owned the drugs, the home, the gun, and that Guerrero-Moya did not live there. Moreover, the trial court instructed the jury on mere presence and association, constructive, sole and joint possession, spatial proximity, intent and knowledge. Given these circumstances, Guerrero-Moya has failed to demonstrate a reasonable probability that the outcome of the trial would have been different had the jury been charged on presumption of ownership.

We note that

[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. To these ends, the law recognizes a "strong presumption" that counsel

9

performed reasonably, and the defendant bears the burden of overcoming this presumption. To carry that burden, the defendant must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not, or put another way, that his lawyer made errors so serious that he was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.

(Citation and punctuation omitted.) *Daughtry v. State*, 296 Ga. 849, 857 (2) (c) (770 SE2d 862) (2015).

*Judgment affirmed. Mercier and Brown, JJ., concur.*