**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 21, 2019**

# In the Court of Appeals of Georgia

A19A0307. BLUE v. THE STATE.

MERCIER, Judge.

A jury found Derek Blue guilty of trafficking in cocaine and possession of a firearm during the commission of a crime.[1] He appeals the convictions entered on the verdict, challenging the sufficiency of the evidence to support the convictions and the court's rulings regarding jury selection and a witness's testimony, and claiming that trial counsel provided ineffective assistance. Because the evidence was insufficient, we reverse the convictions.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence. We neither weigh the evidence nor judge the

---

[1] An order of nolle prosse was entered on a third count (possession of a firearm by a convicted felon).

credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Taylor v. State*, 349 Ga. App. 185 (825 SE2d 552) (2019) (citations and punctuation omitted).[2]

So viewed, the evidence shows the following. Sometime between August 1, 2011 and August 3, 2011, investigators with the Richmond County Sheriff's Office conducted surveillance of and a controlled drug buy at a residence on Lucky Street; they used a confidential informant to purchase the drugs.[3] The house was rented to Blue's girlfriend, Tessamena Walker; Walker lived in the house with her children. An investigator watched the confidential informant approach the door of the residence. The informant met Blue on the porch, and the two entered the house. About four or five minutes later, Blue and the informant exited the rear of the house. The informant

---

[2] The trial of this case occurred in April 2012. Therefore, Georgia's old Evidence Code applies. (This appeal follows the 2018 denial of Blue's motion for an out-of-time appeal.)

[3] The investigator did not testify as to the exact date the surveillance/purchase occurred, only testifying that it was conducted within 72 hours prior to officers obtaining a warrant to search the residence. The search warrant was obtained on the afternoon of August 3, 2011.

returned to his vehicle, and Blue rode away on a bicycle. After the informant left the house, he gave the cocaine that he allegedly purchased to the investigator. Using information regarding the purchase, officers obtained a warrant on August 3, 2011, to search the house. Officers did not conduct any surveillance of the house on August 3, 2011 or August 4, 2011. The informant did not testify at trial.

Officers executed the search warrant on August 4, 2011. Walker and her 13-year-old daughter were in the house; Blue was not. According to one of the investigators, Walker said that Blue had just left. (At trial, Walker denied having made that statement.)

Officers found a total of 219 grams of cocaine in the house. They found 135 grams of crack cocaine in plastic bags inside a purse in a bedroom closet; in a corner of the same bedroom was a shoe box containing a zipped plastic bag, which contained two plastic bags that each held approximately 29 grams of powdered cocaine; on a nightstand in the same bedroom was a gray case (of the type used for storing makeup), the drawer to which held 26 grams of powdered and crack cocaine in plastic bags; also on the nightstand, next to the gray case, was a .38 revolver; there were three digital scales in the kitchen - one on the counter, one in a drawer, and another in a

cabinet; the scale on the counter had cocaine residue on it; a basket of dirty laundry contained "some men's clothing." Officers seized the contraband and arrested Walker.

After Walker's arrest, the home's owner asked officers to watch the house, as the tenant was in custody and the house was supposed to be unoccupied. A deputy returned to the house on August 7, 2011. On his third drive by the house that day, he noticed that a car was parked near the driveway and the back door to the house was unsecured. When the deputy and a back-up officer entered the house, they found Blue and a woman in the living room. Officers "secured" the two individuals because "nobody was supposed to be at the house," and they checked for outstanding warrants. Based on that information, officers arrested Blue. The deputy testified that Blue indicated that he lived on Branch Street and that he worked at a restaurant. A search of Blue's person revealed a key to the Lucky Street house and $1,332 in cash. They found no drugs or drug paraphernalia on Blue or in the house. The deputy testified that Blue "said there were clothes in the house that were his" and "that he stayed there sometimes with his girlfriend."[4]

---

[4] Blue enumerates as error the trial court's denial of his motion for mistrial and/or to strike the testimony and give a curative instruction regarding these statements the officer attributed to Blue, arguing that the State committed a discovery violation by failing to disclose these statements the defendant purportedly made to police before

4

Both Blue and Walker were charged with trafficking in cocaine and possessing a firearm during the commission of a crime. Walker pled guilty to both crimes before trial. At trial, Walker testified that the cocaine and the firearm were hers, that Blue did not "stay" at her house, and that her mother had given Walker's daughter's key to the house to Blue so that he could retrieve her children's clothing. Blue's mother testified that Blue lived with her in her house on Branch Street, that he had his own bedroom there, and that he kept his clothes in his bedroom closet. Blue introduced photographs of his mother's house, his bedroom, his closet and his clothing to support his mother's testimony. His mother also testified that Blue was working in a restaurant during the relevant time period.

1. Blue contends that the evidence was insufficient to support his convictions. The State contends that the evidence was sufficient to prove that Blue was in joint, constructive possession of the cocaine and firearm. We hold that the evidence was insufficient as to both charges.

> [P]ossession of contraband may be joint or exclusive, and actual or constructive. Actual possession means knowing, direct physical control over something at a given time. For constructive possession, the standard

---

trial. See OCGA §§ 17-16-4; 17-16-6 (2011). In light of our holding in this division, however, we do not address that contention.

is also well-understood: if a person has both the power and the intention at a given time to exercise dominion or control over a thing, then the person is in constructive possession of that thing. Mere proximity to contraband, absent other evidence connecting a suspect with that contraband, is not enough to establish constructive possession. If one person alone has actual or constructive possession of a thing, then the person is in sole possession of it. If two or more people share actual or constructive possession of a thing, then their possession is joint.

*Lebis v. State*, 302 Ga. 750, 753-754 (II) (808 SE2d 724) (2017) (citations and punctuation omitted); see also *Jones v. State*, 339 Ga. App. 95, 97-98 (1) (a) (791 SE2d 625) (2016). "The jury may infer the defendant's 'power' from his or her access to the drugs, while they may look to the surrounding circumstances to determine whether the defendant had the requisite intention." *Wooten v. State*, 348 Ga. App. 408, 411 (1) (823 SE2d 98) (2019) (citations and punctuation omitted). Constructive possession can be proven by circumstantial evidence. *Lebis*, supra at 754 (II). "[A]s with any charge based on purely circumstantial evidence, in order to support a conviction the evidence must exclude every reasonable hypothesis, save that of constructive possession by the defendant." Id. (citations and punctuation omitted). "[Q]uestions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and that finding will not be disturbed unless the

6

verdict of guilty is unsupportable as a matter of law." Id. (citations and punctuation omitted).

(a) *Trafficking in cocaine*

The State charged Blue with trafficking in cocaine in violation of OCGA § 16-13-31 (a) (1) (B),[5] alleging that on August 4, 2011, he knowingly possessed 200 grams or more of cocaine. It is undisputed that Blue did not actually possess the drugs found in the house in which Walker was a tenant. Thus, the issue before us is whether the evidence was sufficient to show that he and Walker knowingly shared the power and intention to exercise dominion or control over them. See *Scott v. State*, 326 Ga. App. 115, 117 (1) (756 SE2d 220) (2014).

The State asserts that the following evidence was sufficient "to prove that [Blue] exercised joint constructive possession of the contraband found at" the house: Blue left the house with the confidential informant after the informant went there to buy drugs; Blue was present in the house during the controlled buy; digital scales, one with

---

[5] OCGA § 16-13-31 (a) (1) (2011) pertinently provides: "Any person who knowingly sells, manufactures, delivers, or brings into this state or who is knowingly in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine, as described in Schedule II, in violation of this article commits the felony offense of trafficking in cocaine[.]"

7

cocaine residue, were in plain view in the kitchen, "found . . . not long after [Blue] left the house with the confidential informant"; Blue had a boyfriend-girlfriend "relationship and co-habitation status with the co-defendant [Walker]"; Blue had a large sum of money on him at the time of his arrest; he had a key to the house at the time of the arrest; and "he admitted that he had belongings in the house and that he sometimes stayed there with [Walker]."

It is undisputed that Blue did not own or lease the house where the contraband was found. Thus, there was no presumption that he possessed the contraband. See *Bailey v. State*, 294 Ga. App. 437, 439-440 (1) (669 SE2d 453) (2008). Officers found no bills in Blue's name in the house, as "[e]verything was in another name." Blue's mother testified that he lived with her at her house. At most, Blue "sometimes stayed" at Walker's residence and had some clothing in a basket there. While investigators saw Blue on the premises for a few minutes on August 2, and he entered and exited the house at the same time as the confidential informant, there was no evidence that Blue witnessed or was involved in that (or any other) transaction; the informant did not testify at trial and the transaction was not witnessed or recorded by law enforcement officers, and Blue did not possess any marked currency from the controlled buy. Further, Blue did not leave the premises with the confidential informant; he left on a

8

bicycle while the informant left in a car. Blue was not present when the search warrant was executed on August 4 (days after officers saw him there), though Walker was present. The cocaine was found inside a purse in Walker's closet, in a shoe box in her bedroom, and in a makeup-type case on a nightstand next to her bed; the handgun was found on the nightstand in her bedroom.

Blue's possession of a key to the house - three days after police searched the house and as many as six days after the controlled buy - did not connect him to the drugs. Indeed, Walker explained that her mother had given the key to Blue to retrieve her children's clothing while she was in jail. Similarly, that Blue possessed $1332 in unmarked cash when he was arrested was insufficient to connect him to the drugs found in the house, in light of the time lapse and evidence that he was employed. The evidence did not exclude every reasonable hypothesis save that of constructive possession by Blue. See *Lebis*, supra. The State's evidence did not show essential links between Blue and the drug trafficking charge. See *Scott*, supra at 119; *Cobarrubias-Garcia v. State*, 316 Ga. App. 787, 791-792 (730 SE2d 455) (2012) (physical precedent only); *Brown v. State*, 285 Ga. App. 330, 332-333 (646 SE2d 273) (2007).

Notably, the two cases the State cites for its position that the evidence was sufficient to prove constructive possession of drugs are not factually analogous. In *Vines v. State*, 296 Ga. App. 543 (675 SE2d 260) (2009), which involved a traffic stop, the defendant was in the vehicle in which officers found drugs and guns; there was evidence that he was at times within arm's reach of the backpack that contained a large quantity of drugs; he had in his pocket a fully-loaded magazine that fit another defendant's weapon, and the defendants were heavily armed; the vehicle had a strong odor of marijuana; the defendant was "incredibly" nervous; he lived with two of the defendants at the time of the incident; and a witness testified that she had lived with the defendants and believed they were conducting drug transactions in the residence. Id. at 545-546 (1). And in *Jones v. State*, 339 Ga. App. 95 (791 SE2d 625) (2016), officers received information that the car the defendant owned and was driving would be involved in a drug transaction; when officers stopped and searched the car following a monitored phone call, they found $3,100 in cash in the defendant's possession and a bag of heroin in his passenger's possession; in the apartment the defendant had left just before the stop, officers found a large quantity of heroin, heroin distribution materials, and a checkbook bearing the defendant's name and the

apartment's address, and no other individuals were present. Id. at 96-99 (1). The State failed to produce comparable evidence in this case.

(b) *Possession of a firearm during commission of a crime*

The State charged Blue (and Walker) with possession of a firearm during the commission of a crime in violation of OCGA § 16-11-106, alleging that on August 4, 2011, he had on his person a firearm during the commission of a crime involving the possession of cocaine. OCGA § 16-11-106 (b) (4) (2011) provides that it is unlawful for a person to "have on or within arm's reach of his or her person a firearm . . . during the commission of . . . [a]ny crime involving the possession [of] . . . any controlled substance[.]"

Blue's conviction cannot be sustained unless there was evidence that he had immediate access to the firearm while possessing cocaine. See *Harvey v. State*, 344 Ga. App. 7, 11 (2) (a) (806 SE2d 302) (2017); *Clyde v. State*, 298 Ga. App. 283, 285 (2) (680 SE2d 146) (2009); see also *Davenport v. State*, 308 Ga. App. 140, 148 (1) (c) (706 SE2d 757) (2011) ("[W]hen a defendant is charged under this statute, the evidence is sufficient to sustain a conviction when it is shown at trial that a firearm was within arm's reach of the defendant at any point during the commission of the crime,

11

thus giving the defendant immediate access to the weapon.") (citations and emphasis omitted).

For the reasons discussed in Division 1 (a), there was no evidence from which a rational trier of fact could have found that Blue possessed the cocaine found in the house. The State's failure to prove the predicate felony, possession of cocaine, requires reversal of Blue's conviction for possessing a firearm during the commission of that crime. See OCGA § 16-11-106 (b) (4); see *Jackson v. State*, 309 Ga. App. 24, 29 (1) (b) (709 SE2d 44) (2011) ("[I]t is clear from the language of OCGA § 16-11-106 (b) that the commission of the felony named in the indictment is an essential element of possession of a firearm during commission of a crime.") (citation and punctuation omitted).

2. In light of our holding in Division 1, we do not reach Blue's remaining enumerated errors.

*Judgment reversed. Barnes, P. J., and Brown, J., concur.*