**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS*
*COURT. ALL FILINGS MUST BE SUBMITTED WITHIN*
*THE TIMES SET BY OUR COURT RULES.*

**September 8, 2021**

# In the Court of Appeals of Georgia

A21A0810. HARGROVE v. THE STATE.

BROWN, Judge.

A jury found Peter Hargrove guilty of trafficking in heroin and possession with intent to distribute cocaine. Hargrove appeals his convictions and the denial of his amended motion for new trial, contending that (1) insufficient evidence supports his convictions; (2) the trial court erred in admitting evidence of his prior convictions under OCGA § 24-4-404 (b); and (3) he received ineffective assistance of counsel. We affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). "We neither weigh the evidence nor judge the credibility of witnesses, but determine only

whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation and punctuation omitted.) *Kimble v. State*, 356 Ga. App. 507 (847 SE2d 865) (2020).

So viewed, the evidence presented at trial showed that agents with the Marietta Cobb Smyrna narcotics unit received information that narcotics were being sold in the Five Points area of Smyrna, which eventually led them to a townhome at 4110 Hawthorne Circle. Narcotics agents were surveilling the townhome on the evening of October 28, 2014, and observed multiple vehicles arrive and park in the townhome's driveway or on the street. The person would then exit the vehicle and knock on the townhome's door and have a brief interaction at the door before leaving, or Hargrove would be waiting outside the townhome and meet with the person at their car for a few seconds. The "short stays" led agents to believe that Hargrove was selling drugs out of the townhome. Agents stopped one of the vehicles as it left the townhome and that person agreed to become an informant. The agents returned the following night and watched the informant obtain heroin from Hargrove in a control buy. Seven days later, agents again set up surveillance of the townhome and observed the same informant make a control buy of heroin from Hargrove outside the home.

2

During a third control buy on November 20, one of the agents rode in the car with the informant, posing as the informant's friend. The informant exited the car, met Hargrove in the front yard of the townhome, then returned to the car and handed the agent the heroin he had bought. The agents continued to surveil Hargrove and the townhome and observed what appeared to be several more narcotics transactions.

Based on the foregoing information, agents obtained a search warrant for the townhome. The agents watched Hargrove leave the townhome before entering and searching on December 5. The townhome was separated into two floors: the front door opened into the downstairs where the living area, kitchen, laundry room, and a small bathroom were located while upstairs were bedrooms and another bathroom. In the downstairs bathroom off the kitchen and laundry room — and with a window facing the home's front yard — the agents discovered a bag containing 14.49 grams of heroin, a bag containing 26.63 grams of cocaine, a digital scale, and unused syringes. All of the items were found lying out on the bathroom counter. Agents found plastic baggies and more syringes in the bathroom drawer. Another bag of heroin was found in a bowl in the attached laundry room. Upstairs, agents found what they believed to be nine baggies of cocaine, a bag of heroin, and several bags of marijuana in a dresser drawer in the master bedroom. Two cell phones and a scale

3

were also taken from the bedroom. Two other digital scales were found in a second bedroom upstairs. Inside a coat in the closet of the second bedroom, agents found what they believed to be a bag of cocaine, a cell phone, and $1,984 in cash. Two females were present in the townhome when the search warrant was executed: Anita Patterson and her daughter, Brittany Patterson, who both lived in the home. The agent who found the items in the master bedroom testified that he believed the master bedroom was Brittany Patterson's room. Hargrove was pulled over leaving the neighborhood and detained. A search of his person revealed three cell phones and $3,189 in cash.

Agents obtained a warrant to search the cell phones found on Hargrove as well as the cell phones found in the townhome. A number stored in one of the cell phones found on Hargrove was listed under the name "Chucky." An agent recognized the name because other agents in the narcotics unit had been investigating a narcotics dealer called "Chucky." Agents learned that the phone number associated with one of Hargrove's cell phones was a contact of Chucky and that Hargrove had been communicating with Chucky over the phone. Recordings of calls between Hargrove and Chucky dated October 31, November 4, and November 11, 2014, were played for the jury. The agent investigating Chucky testified that based on the amount of money

4

discussed in the calls between Hargrove and Chucky ($2,250) and his experience conducting undercover narcotics purchases from Chucky, Hargrove was purchasing around one ounce of heroin. The State presented evidence of five other calls between Hargrove and Chucky made on November 25 and December 2. The agent also testified that the area that Hargrove and Chucky discussed for meeting, including a specific laundromat, was the same area in which the agent had purchased heroin from Chucky.

In a joint indictment, Hargrove and Brittany Patterson were charged with trafficking in illegal drugs (heroin) and possession with intent to distribute cocaine. Patterson was also charged with possession with intent to distribute marijuana. At some point before Hargrove's trial, Patterson pleaded guilty, but her conviction and plea are not part of the record. And, from what we can glean from the trial transcript, the jury did not hear evidence of Patterson's guilty plea and conviction. Following Hargrove's conviction, the trial court denied his motion for new trial, as amended, and Hargrove appeals.

1. Hargrove argues that the evidence presented by the State was insufficient to support his convictions because the cocaine and heroin were found inside the townhome of his co-indictee, Brittany Patterson, and nothing linked him to the drugs.

5

Hargrove concedes that the evidence proves that he was involved in illegal drug transactions, but argues that the evidence failed to prove he *possessed* the heroin and cocaine seized from the townhome.[1] We disagree.

In order to prove the drug charges brought against Hargrove, the State was required to prove that he possessed the heroin and cocaine. See OCGA §§ 16-13-30 (b) and 16-13-31 (b).

> [P]ossession of contraband may be joint or exclusive, and actual or constructive. Actual possession means knowing, direct physical control over something at a given time. For constructive possession, the standard is also well-understood: if a person has both the "power and the intention at a given time to exercise dominion or control" over a thing, then the person is in constructive possession of that thing. Mere proximity to contraband, absent other evidence connecting a suspect with that contraband, is not enough to establish constructive possession. If one person alone has actual or constructive possession of a thing, then the person is in sole possession of it. If two or more people share actual or constructive possession of a thing, then their possession is joint.

(Citations and punctuation omitted.) *Lebis v. State*, 302 Ga. 750, 753-754 (II) (808 SE2d 724) (2017). As the State presented no evidence showing that Hargrove actually possessed the drugs found in the townhome, we must determine whether it presented

---

[1] We note that Hargrove cites no law in support of this enumeration.

6

sufficient evidence of constructive possession. See *Hill v. State*, ___ Ga. App. ___ (___ SE2d ___) (No. A21A0351, June 25, 2021). See also *Blue v. State*, 350 Ga. App. 702, 705 (1) (a) (830 SE2d 279) (2019).

> Constructive possession can be proven — and very often is proven — by circumstantial evidence. Of course, as with any charge based on purely circumstantial evidence, in order to support a conviction the evidence must exclude every reasonable hypothesis, save that of constructive possession by the defendant. As we have noted, proximity to contraband is plainly not enough. But as this Court has also held, consistent with OCGA § 24-14-6,[2] questions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and that finding will not be disturbed unless the verdict of guilty is unsupportable as a matter of law. In other words, whether the evidence shows something more than mere presence or proximity, and whether it excludes every other reasonable hypothesis, are questions committed principally to the trier of fact, and we should not disturb the decisions of the trier of fact about these things unless they cannot be supported as a matter of law.

(Citation and punctuation omitted.) *Hill*, ___ Ga. App. at ___. For constructive possession,

---

[2] This Code section provides: "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."

7

[t]he intent to exercise control over the drugs . . . may be derived from the surrounding circumstances such as a defendant's attempts to flee or elude police; inconsistent explanations by the defendant for [his] behavior; the presence of significant amounts of contraband and drug paraphernalia in plain view; the defendant's possession of large amounts of cash, other indicia of the sale of drugs, or drug-related paraphernalia; evidence that the defendant was under the influence of drugs; or drug residue found on the defendant.

(Citation and punctuation omitted.) Id.

Here, there was no evidence that Hargrove owned the townhome or that he was living or staying there. However, "[t]his is not a case in which the sole evidence of drug possession was the fact that [Hargrove] was present at or near a house where drugs were discovered." *Johnson v. State*, 338 Ga. App. 500, 503 (790 SE2d 291) (2016). The circumstantial evidence presented by the State against Hargrove includes the following: the heroin and cocaine Hargrove was charged with possessing were found in plain view in the laundry room and attached bathroom, i.e., common areas in the townhome's lower level;[3] the townhome's front door was located on the lower level; agents observed persons engaged in drug transactions at the front door; the

---

[3] Hargrove asserts that he also was charged with possessing the drugs found in the master bedroom and the coat in the second bedroom, but this contention is belied by the record.

8

lower level bathroom had a window overlooking the front yard; on three separate occasions, agents observed Hargrove sell heroin to the informant in the townhome's front yard; Hargrove had just left the townhome when agents searched the home; when Hargrove was arrested leaving the townhome, he possessed $3,189 in cash and three cell phones; during the time period of surveillance, one of the cell phones was used to communicate with a person called "Chucky," who was being investigated for selling drugs; Hargrove had prior convictions for possession of cocaine, sale of cocaine, sale and delivery of cocaine, and possession of cocaine with intent to distribute, evidence of which was properly admitted at trial, see Division 2, infra. Based on this evidence, the jury was authorized to find that Hargrove constructively possessed the cocaine and heroin found in the downstairs of the townhome. Compare *Blue*, 350 Ga. App. at 705-706 (1) (a) (insufficient evidence supported defendant's trafficking conviction where no evidence was presented that defendant was involved in the drug transaction with the confidential informant; transaction was not witnessed or recorded by law enforcement; defendant was not present when officers searched home; all contraband was found in homeowner's bedroom; and evidence that defendant possessed $1,332 in unmarked cash when he was arrested three days after the search was insufficient to connect him to the drugs found in the house, in light of

9

the time lapse and evidence that he was employed); *Morales v. State*, 332 Ga. App. 794, 796-797 (1) (775 SE2d 168) (2015) (insufficient evidence supported defendant's trafficking and possession with intent to distribute convictions where defendant did not own or live in house where contraband was found, defendant arrived at house only minutes before search, nothing found in search linked defendant to house, no drugs or cash were found on defendant's person, contraband was hidden in house and not in plain sight, and there was no evidence that defendant was involved in the control buy at the house).

2. Hargrove contends that the trial court erred in admitting other-act evidence under OCGA § 24-4-404 (b) ("Rule 404 (b)"), specifically, evidence of four prior convictions, because the evidence was irrelevant to any issue other than his character and was improper propensity evidence. Again, we disagree.

(a) *Rule 404 (b)*. Pursuant to Rule 404 (b), "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith." However,

> such other-act evidence is admissible for other purposes, including to prove intent, motive, and absence of mistake or accident. The party offering evidence under Rule 404 (b) must show three things: (1) that the evidence is relevant to an issue in the case other than the defendant's

character; (2) that the probative value of the evidence is not substantially outweighed by its undue prejudice; and (3) that there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the other act.

(Citation and punctuation omitted.) *Strong v. State*, 309 Ga. 295 (2) (a) (845 SE2d 653) (2020). "A trial court's decision to admit other[-]acts evidence will be overturned only where there is a clear abuse of discretion." (Citation and punctuation omitted.) *Moton v. State*, 351 Ga. App. 789, 792 (833 SE2d 171) (2019).

(b) *The trial court's admission of the other-act evidence under Rule 404 (b).* The State filed pretrial notice of its intent to introduce under Rule 404 (b) evidence of Hargrove's four prior convictions for drug-related offenses. The State argued that the prior convictions rebutted Hargrove's claim that all of the drugs found in the townhome belonged to Brittany Patterson, his co-indictee. Hargrove objected to their admission, arguing that the other acts were not relevant and that they did not pass the second part of the Rule 404 (b) test because the convictions were approximately eight to ten years in age and involved a different drug, crack cocaine. The trial court ruled that both of the 2004 convictions were admissible for the purposes of proving Hargrove's "intent, knowledge, identity, and absence of mistake." As to the 2005 and 2006 convictions, the court ruled them admissible for the purposes of "intent, plan,

11

knowledge, identity, and absence of mistake." At trial, the court gave a limiting instruction prior to the testimony involving the four convictions as well as in its charges to the jury. We will summarize the evidence about each of the convictions that the trial court admitted at trial and then address whether that evidence was properly admitted by the trial court.

(i) *The February 2004 Offense.* An officer from the Marietta Police Department testified that on February 2, 2004, he was patrolling near an inn known for narcotics sales and observed a car in the parking lot with three males inside. Upon seeing the three males still sitting in the parked car when the officer drove by a second time more than 30 minutes later, he approached the car and asked the driver, Hargrove, to step out of the vehicle. The officer recognized the man in the backseat, Hargrove's father, from prior incidents involving illegal narcotics. At some point in the interaction, the officers searched the car and found a crack cocaine rock in a cigar tube under the driver's seat. In connection with this incident, Hargrove pleaded guilty to possession of cocaine in August 2004, and a certified copy of his conviction was admitted into evidence at trial.

(ii) *The June 2004 Offense.* A Cobb County officer testified that in the early morning hours of June 9, 2004, a neighbor reported that an unknown vehicle was

12

parked in front of a home and appeared to be occupied. When the officer arrived, the vehicle was still parked in the driveway and the officer spoke with the driver, Hargrove. The officer smelled the odor of marijuana and detained Hargrove and the passenger. A search of the vehicle yielded marijuana and a rock of crack cocaine in the center console. Hargrove pleaded guilty to possession of cocaine in August 2004, and a certified copy of his conviction was admitted at trial.

(iii) *The October 2004 Offense.* An officer who worked with the Marietta Cobb Smyrna narcotics unit at the time of the incident testified that he arrested Hargrove on October 8, 2004, in connection with a sale to an undercover agent. When the agent searched Hargrove upon arrest, he found eight individual bags of crack cocaine totaling 4.8 grams in Hargrove's pocket. Hargrove subsequently pleaded guilty to sale and delivery of a controlled substance and possession with intent to distribute cocaine in August 2005, and a certified copy of his conviction was admitted at trial.

(iv) *The February 2006 Offense.* An officer who worked with the Marietta Cobb Smyrna narcotics unit at the time of the incident testified that on February 7, 2006, a confidential informant advised police that Hargrove was selling crack cocaine at a hotel. The officer arranged for the informant to contact Hargrove, and the officer bought crack cocaine from Hargrove in a control buy. Hargrove pleaded guilty to

selling cocaine in March 2006, and a certified copy of his conviction was admitted at trial.

(c) *Analysis.* We now turn to whether the trial court abused its discretion in admitting the convictions, focusing only on the first and second showings required to admit evidence under Rule 404 (b) as Hargrove does not argue that any of the convictions should have been excluded based on the third part of the test.

(i) *Relevance.* "Relevant evidence" is evidence which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. "This is a binary question — evidence is either relevant or it is not." *Strong*, 309 Ga. at 301 (2) (a). "Where the extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses. Thus, where the state of mind required for the charged and extrinsic offenses is the same, the first prong of the Rule 404 (b) test is satisfied." (Citation and punctuation omitted.) *Bradshaw v. State*, 296 Ga. 650, 657 (3) (769 SE2d 892) (2015). Accord *Naples v. State*, 308 Ga. 43, 51 (2) (e) (838 SE2d 780) (2020) ("the relevance of other acts evidence offered to show intent is established when the [other] act was committed with the same state of mind as [a]

14

charged crime"). Here, Hargrove placed his intent at issue by pleading not guilty and taking no affirmative steps to relieve the State of its burden to prove intent. See *Moton*, 351 Ga. App. at 792. See also *Burgess v. State*, 349 Ga. App. 635, 641 (3) (824 SE2d 99) (2019) (where defendant framed his defense in terms of lack of possession and equal access of others to the drugs, defendant "did not relieve the State of the burden of proving intent merely by focusing his defense on the possession aspect of the crime"), disapproved on other grounds, *Hill*, supra. To prove that Hargrove committed the charged crime of possession of cocaine with intent to distribute, the State had to prove both that Hargrove had actual or constructive possession of the drugs and that he had the requisite intent to distribute them. See *Burgess*, 349 Ga. App. at 641 (3). "Because the prior crime [of possession with intent to distribute] and at least one of the offenses for which [Hargrove] was on trial were identical, the intent required to prove the crimes was necessarily the same." Id. See also *Gunn v. State*, 342 Ga. App. 615, 621 (804 SE2d 118) (2017) (in prosecution for possession of cocaine with intent to distribute and trafficking in cocaine, evidence of defendant's prior conviction for possession of cocaine with intent to distribute was relevant to show defendant's intent).

15

Similarly, Hargrove's convictions for sale of cocaine and sale and delivery of cocaine were relevant to prove the requisite intent to distribute. See *Hood v. State*, 299 Ga. 95, 101 (4) (786 SE2d 648) (2016) (evidence of defendant's prior drug sales relevant because the "charged . . . crime [of possession with intent to distribute] required the same intent as that involved in his uncharged sales of prescription pills"). See also *United States v. Lewis*, 129 Fed. Appx. 573, 578 (I) (11th Cir. 2005) (defendant's prior convictions for possession and sale of heroin, possession and sale of cocaine, and possession with intent to distribute heroin and cocaine relevant to establish defendant's intent in prosecution for counts of possession with intent to distribute cocaine).[4]

As to the prior possession convictions, "[b]ecause no evidence showed [Hargrove] in actual possession of the [cocaine and heroin], the State was required to prove constructive possession, i.e., that he knowingly had both the power and intention at a given time to exercise control over [the drugs]." (Citation and punctuation omitted.) *Watkins v. State*, 353 Ga. App. 606, 610 (2) (a) (i) (839 SE2d 41) (2020). See generally *Kier v. State*, 292 Ga. App. 208, 209 (1) (663 SE2d 832)

---

[4] We look to federal cases when analyzing the admission of evidence under the new Evidence Code. *Hamlett v. State*, 350 Ga. App. 93, 100 (2), n.4 (828 SE2d 132) (2019). See also *State v. Almanza*, 304 Ga. 553, 555 (2) (820 SE2d 1) (2018).

16

(2008) (in a constructive possession case the State needs to demonstrate beyond a

reasonable doubt that the defendant "knowingly had both the power and intention at

a given time to exercise control over the [drugs]") (citation and punctuation omitted).

See also *United States v. Galindez*, 999 F3d 60, 67 (1st Cir. 2021) (explaining that

"other-acts evidence may be specially relevant to establish knowledge and intention"

in constructive-possession cases). In *Watkins*, we explained:

> The charged crime [of felony possession of more than one ounce of
> marijuana] and the prior drug offenses [of possession of marijuana]
> required evidence that [the defendant] intended to possess the drug at
> issue. See OCGA §§ 16-13-30 (a) ("Except as authorized by this article,
> it is unlawful for any person to purchase, possess, or have under his or
> her control any controlled substance."); 16-13-30 (j) (1) ("It shall be
> unlawful for any person to possess, have under his or her control,
> manufacture, deliver, distribute, dispense, administer, purchase, sell, or
> possess with intent to distribute marijuana."). The necessary state of
> mind was the same — an intent to possess and control the illegal
> substance.

353 Ga. App. at 611 (2) (a) (i). Here, the prior convictions for possession of cocaine

were relevant to establish Hargrove's intent to possess and control the cocaine and

heroin found in the townhome. See id. See also *United States v. McQueen*, 267 Fed.

Appx. 880, 882 (11th Cir. 2008) ("[e]vidence of prior personal drug use is admissible

17

to prove intent in a subsequent prosecution for distribution of narcotics"). Accordingly, the trial court did not err in finding the other-acts evidence relevant to establish Hargrove's intent.[5]

(ii) *Rule 403 Balancing.* Even if Rule 404 (b) evidence is relevant, it still may be excluded under OCGA § 24-4-403 (b) ("Rule 403") "if its probative value is substantially outweighed by the danger of unfair prejudice[.]" (Citation and punctuation omitted.) *Strong*, 309 Ga. at 301 (2) (a). "To determine whether relevant evidence is more probative than prejudicial, our Supreme Court has explained that, generally speaking, the greater the tendency to make the existence of a fact more or less probable, the greater the probative value." (Citations and punctuation omitted.) *Chambers v. State*, 351 Ga. App. 771, 778 (2) (833 SE2d 155) (2019). And, "the extent to which evidence tends to make the existence of a fact more or less probable depends significantly on the quality of the evidence and the strength of its logical connection to the fact for which it is offered." *Olds v. State*, 299 Ga. 65, 75 (2) (786

---

[5] Having concluded that the other-act evidence was admissible for the purpose of proving Hargrove's intent, we need not consider whether it was also admissible for the purpose of showing knowledge, identity, and absence of mistake or accident. See *Hood v. State*, 309 Ga. 493, 500 (2), n.8 (847 SE2d 172) (2020). Hargrove does not enumerate any error with regard to the trial court's charge to the jury about the purposes for which it could consider the other-act evidence.

SE2d 633) (2016). The Rule 403 analysis "requires a common sense assessment of all the circumstances surrounding the extrinsic act and the charged offense" including "the prosecutorial need for the extrinsic evidence, the overall similarity between the extrinsic act and the charged offense, and the temporal remoteness of the other act." (Citations and punctuation omitted.) *Jernigan v. State*, 357 Ga. App. 415, 422-423 (2) (a) (ii) (848 SE2d 707) (2020). "[I]n reviewing issues under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." (Citation and punctuation omitted.) *Green v. State*, 352 Ga. App. 284, 291 (2) (e) (834 SE2d 378) (2019).

Here, all of the prior drug convictions are either identical or similar to the charged offenses and thus highly probative to show Hargrove's intent with respect to the charged offenses. See, e.g., *United States v. Sawyer*, 361 Fed. Appx. 96, 98-99 (II) (A) (11th Cir. 2010) (defendant's prior convictions for sale of cocaine, possession with intent to sell, and possession of cocaine similar to cocaine conspiracy charge and thus were highly probative of intent). See also *McQueen*, 267 Fed. Appx. at 882-883. While Hargrove argued below that the prior offenses are more prejudicial than probative because they involved a different drug (crack cocaine) than the charged offenses, factual similarity is only one consideration in assessing the totality of the

19

circumstances. See, e.g., *United States v. Cochran*, 683 F3d 1314, 1321 (III) (11th Cir. 2012) (evidence of defendant's prior trafficking conviction involving a different drug was more probative than prejudicial in prosecution for trafficking). See also *Watkins*, 353 Ga. App. at 611 (2) (a) (i) (where one of prior offenses involved possession of cocaine rather than marijuana). Moreover, "when other-acts evidence is introduced to prove intent as opposed to identity a lesser degree of similarity between the charged crime and the extrinsic evidence is required." (Citation, punctuation, and emphasis omitted.) *Jernigan*, 357 Ga. App. at 424 (2) (a) (ii). See *Burgess*, 349 Ga. App. at 642 (3). See also *United States v. Delgado*, 56 F3d 1357, 1366 (II) (B) (11th Cir. 1995) ("when other crimes evidence goes to intent rather than identity a lesser degree of similarity between the charged crime and the uncharged crime is required").

As to prosecutorial need, the State needed to overcome Hargrove's defense that he did not possess the cocaine or heroin and that the drugs belonged to Brittany Patterson. Indeed, while the evidence was sufficient to support Hargrove's convictions, it was entirely circumstantial. Thus, the State's need for evidence that Hargrove had committed similar crimes was significant, which weighs in favor of admission under Rule 403. As for the lapse in time, the ten- and eight-year intervals

between Hargrove's other acts and the crimes charged in this case were not "too remote to erode the probative value of the prior conviction[s]." *Gunn*, 342 Ga. App. at 621-622 (1) (defendant's eleven-year-old conviction for possession with intent to distribute not so remote as to be lacking in probative value). See also *Sloans v. State*, ___ Ga. App. ___ (2) (A21A0125) (June 28, 2021) (twelve-, eleven-, and five-year intervals between defendant's drug-related convictions and the crimes charged not so remote in time as to weigh in favor of exclusion under Rule 403). Keeping in mind that the exclusion of evidence under Rule 403 "is an extraordinary remedy which should be used only sparingly," *Olds*, 299 Ga. at 70 (2), we cannot say that the trial court abused its discretion in finding that the probative value of Hargrove's prior convictions was not substantially outweighed by unfair prejudice.[6]

3. Hargrove lastly contends that his trial counsel rendered ineffective assistance by (1) failing to request a jury charge on presumption of possession and (2) failing

---

[6] Hargrove alternatively argues that if this Court finds that trial counsel waived his objection to the evidence by failing to object at the time it was admitted, counsel was ineffective in failing to object to the evidence at trial. However, trial counsel was not required to renew his objection at trial to preserve the objection for appeal based on the Supreme Court's holding in *Whitehead v. State*, 287 Ga. 242, 245-249 (2) (695 SE2d 255) (2010). See also *Harper v. State*, 330 Ga. App. 561, 566-567 (2) (b) (768 SE2d 755) (2015).

to object to the testimony of the two GBI forensic chemists. We find no merit in either contention.

"To prevail on a claim of ineffective assistance of counsel, a criminal defendant must prove that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different." (Citation and punctuation omitted.) *Guerrero-Moya v. State*, 350 Ga. App. 233, 235 (3) (828 SE2d 629) (2019). And, "if we determine that one element is missing we need not consider whether the defendant has established the other element." (Citation and punctuation omitted.) *Murrell v. State*, 317 Ga. App. 310, 317 (2) (730 SE2d 675) (2012).

(a) Hargrove argues that trial counsel was ineffective in failing to request a jury charge on presumption of ownership or possession because his sole defense at trial was that he did not possess the heroin or cocaine found in the townhome and that it belonged to Brittany Patterson.

> [W]hen a defendant raises an ineffective assistance of counsel claim based on counsel's failure to request or object to certain jury charges, the defendant must show that the charges in question were erroneous

22

and that, if proper charges had been given, there is a reasonable probability that the result of the trial would have been different.

(Citation and punctuation omitted.) *Wilhite v. State*, 337 Ga. App. 324, 325 (1) (787 SE2d 293) (2016).

Pretermitting whether a jury charge on presumption of possession was appropriate in this case,[7] the given charges, as a whole, adequately covered the

---

[7] The pattern charge states:

If you find that a person owns or is the lessee of a house or premises, you will be permitted, but not required, to infer that such person is in possession of the entire premises and all of the property located on or in the premises. However, this is a rebuttable inference and may be overcome by evidence in the case that others had access to the premises. Whether or not this inference is drawn from proof that a person is the owner or the lessee of a house or premises and whether or not the inference has been overcome by proof that others had access to the premises are questions for the jury alone. I further charge you in that connection that if you find that the house or premises were used by others, with the defendant, such evidence would not alone authorize a conviction. However, such a fact, if it is a fact, should be considered by you, the jury, together with all of the evidence in the case in passing upon the guilt or innocence of the defendant.

Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2021), § 2.76.30.

principle. The trial court instructed the jury on mere presence and association, actual, constructive, sole and joint possession, and intent. See *Guerrero-Moya*, 350 Ga. App. at 237 (3) (b). Accordingly, this argument is without merit.

(b) Hargrove also asserts that trial counsel's failure to object to the testimony of the GBI chemists on hearsay and Confrontation Clause grounds amounted to deficient performance. Hargrove contends that because the chemists did not perform the testing, they were "surrogate witnesses" who simply read the testing analyst's notes.

The testing on the contraband in the case was originally performed by Christina Truitt, but she was on leave and unavailable to testify at trial. Stephanie Menendez, a GBI forensic chemist, peer reviewed Truitt's work on the three bags exchanged in the control buys with the confidential informant. Menendez testified that when GBI chemists "complete [their] analysis and . . . make a report for these cases, another scientist has to review all the quality control, all the data, to make sure it met [GBI's]

---

Generally, this charge is applicable where "the [S]tate presents evidence that a defendant owned or controlled premises where contraband was found, . . . [giving] rise to a rebuttable presumption that the defendant possessed the contraband." (Citation omitted.) *Jackson v. State*, 271 Ga. App. 278, 282 (3) (609 SE2d 207) (2005) (in equal access case, where State never sought to prove that [the defendant] owned or controlled the residence where contraband found, no presumption of possession arose).

24

standards for quality control and also followed all of our policies." Menendez further testified that she "looked at the data that is in the case file. I made sure that all quality control that is in the case file did indeed pass and then all of the data . . . met all of our requirements per our policy." Based on her review and interpretation of the data, the contents of the three bags tested were positive for heroin. Tonya Bailey, another GBI forensic chemist, peer reviewed Truitt's analysis of the items found during the search of the townhome and testified that based on her review of the data, the contents of the bag found in the downstairs bathroom tested positive for heroin, and the white solid material in the bag found in the same bathroom tested positive for cocaine.

Hargrove argues that this testimony was improper because Menendez and Bailey were acting as mere conduits for Truitt's findings. We disagree. "It is well established that an expert may base her opinions on data gathered by others." (Citation and punctuation omitted.) *Sanchious v. State*, 359 Ga. App. 649, 653 (1) (a) (859 SE2d 814) (2021). In *Watkins v. State*, 285 Ga. 355, 358 (2) (676 SE2d 196) (2009), our Supreme Court addressed a similar argument. There, GBI toxicologist Leigh Ann Champion testified about the victim's blood alcohol level at the time of her death. 285 Ga. at 358 (2). As explained by the Supreme Court:

> The blood alcohol testing was originally performed by Della Smith, and that testing was later subjected to a peer review by Champion, who reviewed the testing procedures and data gathered by Smith for accuracy. By the time of trial, Smith was no longer employed by the GBI, so Champion testified about the blood test and the results of her peer review. Watkins argues that this testimony was improper because Champion was acting as a mere conduit for Smith's hearsay findings. The record does not support this contention. Rather than being a mere conduit for Smith's findings, Champion reviewed the data and testing procedures to determine the accuracy of Smith's report. An expert may base her opinions on data gathered by others. As a result, Champion's testimony was properly admitted into evidence. . . .

(Citation and punctuation omitted.) Id. Similarly, here, Truitt's testing and analysis of the contraband was subject to peer review by Menendez and Bailey, who reached their own independent conclusions as to the data. Thus, Menendez and Bailey's testimony was not "a mere conduit" for Truitt's hearsay findings. See *Watkins*, 285 Ga. at 358 (2); *Rector v. State*, 285 Ga. 714, 715 (4) (681 SE2d 157) (2009) (trial court did not err in allowing toxicologist to testify about toxicology report relating to deceased victim that had been prepared by another doctor). See also *Sanchious*, 359 Ga. App. at 654-656 (1) (a).

26

For these same reasons, we likewise find no merit in Hargrove's contention that his trial counsel should have objected to the testimony of Menendez and Bailey on Confrontation Clause grounds. See *Sanchious*, 359 Ga. App. at 654 (2) (a) (analyst who did not personally perform DNA tests, but peer reviewed work of unavailable analyst who did, could testify as to report and her own independent conclusion based on the data; thus, trial counsel was not ineffective for failing to raise a meritless Confrontation Clause challenge to testimony). See also *Leger v. State*, 291 Ga. 584, 592 (5) (732 SE2d 53) (2012) ("the Confrontation Clause does not require the analyst who actually completed the forensic testing used against a defendant to testify at trial") (citation and punctuation omitted). Accordingly, Hargrove's ineffective assistance claims fail because he has not established that trial counsel performed deficiently in any respect.

*Judgment affirmed. Doyle, P. J., and Reese, J., concur.*

27